J-S04030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRAEMAR PARRISH | : | |
| | : | No. 175 MDA 2017 |
| Appellant | | |

Appeal from the Judgment of Sentence March 22, 2016
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0003237-2014

BEFORE:  SHOGAN, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 09, 2018**

Appellant, Braemar Parrish, appeals from the Judgment of Sentence imposed following his convictions of two counts each of Possession with Intent to Deliver ("PWID") (heroin and methamphetamines), Conspiracy, and Possession of a Controlled Substance, and one count each of Possession of Drug Paraphernalia and Firearms Not to be Carried Without a License.[1]

The charges in this case stem from the police search of a vehicle driven by Pernell Riddick.  When the police pulled the vehicle over, they observed Appellant seated in the back seat.  The police found in the front seat a black bag that contained drugs, drug paraphernalia, and a gun.  The police also found a gun under the front passenger seat and marijuana in a cup holder on

_____

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. § 903, 35 P.S. §780-113(a)(16); 35 PS. § 780-113(a)(32); and 18 Pa.C.S. §6106(a)(1), respectively.

the front passenger-side door.  Appellant contends, *inter alia*, that the evidence was insufficient to establish that the he even knew about the contraband, let alone exercised dominion and control over it.  We agree and, accordingly, reverse Appellant's Judgment of Sentence.

The facts and procedural history most relevant to this appeal are as follows.  On August 7, 2014, after observing a tinted-windows violation, Kingston Police Officer John Bevilaqua and Sergeant Height[2] conducted a traffic stop of a Lincoln MKZ four-door sedan.  The officers followed the vehicle without lights or sirens for several blocks, and then indicated to the driver of the vehicle, Mr. Riddick, that he should pull the vehicle over.  After Mr. Riddick pulled over, the officers immediately approached the vehicle and while doing so noticed it rocking back and forth.

Mr. Riddick rolled down the window, and the police officers smelled marijuana and observed a plastic baggie containing marijuana in plain view.  They also observed Mr. Riddick straddling the center console between the two front seats and the grip of a silver handgun protruding from under the front passenger seat.  The officers further observed Appellant seated behind the driver's seat with his hands on the headrest of the driver's seat.

The officers arrested Mr. Riddick and Appellant and subsequently searched the entire vehicle.  On the floor on the passenger side of the front

_____

[2] Sergeant Height's first name does not appear in the Notes of Testimony.

of the vehicle, the officers found a black bag. In the bag was a loaded .45 caliber handgun,[3] 250 wax paper packets of heroin packaged into bundles, 12 individual packets of methamphetamines, a baggie of loose heroin, two scales, packaging material, and unknown powder substance, a spoon, and a magazine containing .40 caliber ammunition. The officers also found in the front of the passenger cabin of the vehicle, marijuana on the passenger-side door and a .40 caliber handgun protruding from under the passenger-side seat.

In the glove compartment, the officers found an extra magazine of bullets, and in the trunk, they found a bulletproof vest. The officers also found $1,335 in cash on Appellant and $2,168 on Riddick. During his arrest, Appellant cooperated with the police, correctly identified himself, and did not attempt to flee.

Police charged Appellant with the above crimes,[4] as well as one additional count of Possession of a Controlled Substance and one count each of Receiving Stolen Property and Person Not to Possess Firearm.[5] Before trial, the court severed the Person Not to Possess Firearm offense from Appellant's other offenses.

---

[3] Police later identified this handgun as having been stolen.

[4] Police also charged Mr. Riddick, and on December 5, 2014, the court severed Appellant's case from Mr. Riddick's.

[5] 35 P.S. § 780-113(a)(16); 18 Pa.C.S. § 3925(a); and 18 Pa.C.S. § 6105(a)(1), respectively.

At Appellant's jury trial, Officer Bevilaqua testified regarding the above details of the stop and search of the vehicle. In addition, he stated that he observed the vehicle "rocking back and forth in a violent manner." N.T., 1/19/16, at 60. Because of the heavy window tint, however, he "could not see inside the vehicle to see any furtive movement being conducted." *Id.* He testified that when he was finally able to see into the car, he observed Mr. Riddick straddled over the center console of the vehicle, half on the passenger side and half on the driver's side. He saw Appellant, who was between 5'11" and 6' tall and weighed 270 lbs., seated in the back seat on the driver's side with his hands resting on the headrest in front of him. *Id.* at 60-62, 76-77. Officer Bevilaqua also testified that he smelled marijuana emanating from the vehicle. *Id.* at 60-61.

Officer Bevilaqua further testified that, after Sergeant Height observed a small bag of marijuana in plain view in the front of the car in the passenger side door, Mr. Riddick admitted that it was his. As the officers removed Mr. Riddick from the car, Sergeant Height observed a .40 caliber Smith and Wesson under the front passenger seat. *Id.* at 63, 78.

On cross-examination, Officer Bevilaqua testified that Appellant was not the registered owner of the vehicle and Appellant did not have a key to the car's glove compartment or trunk. *Id.* at 77, 85-86. Moreover, Officer Bevilaqua stated that, because he first saw Appellant in the back seat, he inferred that Appellant was not the vehicle's operator. *Id.* at 86. Officer

Bevilaqua confirmed that Appellant correctly identified himself, cooperated with him and Sergeant Height, and did not attempt to flee. *Id.* at 88.

Officer Bevilaqua also testified that police did not test any of the items found in Mr. Riddick's vehicle for fingerprints. *Id.* at 86-87.

Kingston Police Detective Edward Palka testified for the Commonwealth as an expert in street-level drug interdiction. *Id.* at 112. He reviewed the evidence, prepared an expert report, and concluded that Appellant possessed the controlled substances not for personal use, but to sell to others. *Id.* at 113-116.

Detective Palka also concluded that the presence of loaded handguns and a bulletproof vest reflected the inherent dangerousness of drug dealing. *Id.* at 126.

In concluding that Appellant "constructively possessed" the handguns, Detective Palka testified that the "fact that there was [*sic*] two handguns present[,] not just one[,] to me shows that both individuals possessed a handgun. And in all the investigations that I have done, I don't remember ever coming – having more than one handgun." *Id.* He reiterated that he does not generally come across one person carrying more than one gun in a car. *Id.* at 130.[6]

_____

[6] Immediately following this testimony, Appellant's counsel objected to Detective Palka offering the opinion that "one person doesn't possess two handguns." *Id.* at 127. Counsel asserted that Detective Palka's testimony was inappropriate because the question of whether Appellant possessed a

Timothy Evans testified on Appellant's behalf. Mr. Evans testified that Appellant had been at a party hosted by Mr. Evans all afternoon on the day of Appellant's arrest and stayed until approximately 2:00 AM. *Id.* at 151-52. Mr. Evans testified that he asked Mr. Riddick to drive Appellant home at the end of the party. *Id.* at 152. Mr. Evans further testified that, when Appellant left the party in Mr. Riddick's car, Appellant was not carrying a satchel or any kind of bag. *Id.* at 153. He also stated that he saw Appellant lay down in the back seat when Appellant got in the car. *Id*.

On January 20, 2016, the jury convicted Appellant of the above charges.[7] The court sentenced Appellant on March 22, 2016, to an aggregate term of 88 to 176 months' incarceration and ordered Appellant to pay $356 in restitution to the Pennsylvania State Police Lab for crime lab processing fees.[8]

On March 30, 2016, Appellant filed a Motion for Modification of Sentence and Motion for New Trial. Two days later, he filed a Motion to Compel Discovery. On April 4, 2016, Appellant filed a Motion to Vacate Sentence on Firearms Not to be Carried Without a License and to Prohibit Trial on Person Not to Possess Firearm. On April 27, 2016, the Commonwealth filed a Response in Opposition to Appellant's Motion to Vacate and Prohibit Trial.

_____

handgun is an issue of fact for the jury to resolve. *Id.* The court overruled Appellant's objection. *Id.*

[7] The court continued the trial on Appellant's Person Not to Possess Firearm charge pending resolution of this appeal.

[8] The court ordered the restitution amount split with Riddick. N.T., 3/22/16, at 30.

On July 28, 2016, Appellant's Motion for Modification of Sentence and Motion for a New Trial were deemed denied by operation of law; however, the trial court clerk did not enter an order advising Appellant as required by Pa.R.Crim.P. 720(B)(3)(c) and 720(B)(4). Instead, on December 20, 2016, the trial court entered an Order denying Appellant's Motion to Modify Sentence and Motion to Vacate and Prohibit Trial. On January 18, 2017, the court entered an Order finding Appellant's Motion for a New Trial moot as having been denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(a).[9]

On January 19, 2017, Appellant filed a Notice of Appeal from his Judgment of Sentence. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following four issues on appeal:

1. Whether the Commonwealth presented legally insufficient evidence that Appellant, beyond a reasonable doubt, actively or constructively possessed the firearms, drugs, and drug paraphernalia relating to the crimes charged?

2. Whether the trial court erred in denying a new trial based on violations by the Commonwealth of discovery obligations under the United States and Pennsylvania Constitutions, the

_____

[9] Pa.R.Crim.P. 720(B)(3)(a) provides that "[i]f the judge fails to decide the motion within 120 days, or to grant an extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law." This Court has found that a court breakdown occurs when the clerk of court fails to enter an order notifying the appellant that his post-sentence motion was denied by operation of law. **Commonwealth v. Patterson**, 940 A.2d 493, 498-99 (Pa. Super. 2007). Because the trial court clerk of courts failed to enter an order notifying Appellant that his Post-Sentence Motion was denied by operation of law at the expiration of 120 days, and the court did not do so until January 18, 2017, we conclude that Appellant's January 19, 2017 Notice of Appeal is timely.

- 7 -

Pennsylvania Rules of Criminal Procedure[,] and the rule of **Brady v. Maryland** and its progeny, and after-discovered evidence concerning jail calls between the [c]o-defendant's mother and [Appellant]?

3. Did the trial court abuse its discretion in allowing the Commonwealth to introduce testimony from the expert witness to say that the presence of two handguns indicates that two people possessed a handgun, thereby offering an opinion as to guilt, over the objection by [Appellant's] counsel?

4. Was Appellant subjected to an illegal sentence with the [c]ourt ordered restitution to be paid when there was no victim as defined by the holding in **Commonwealth v. Veon**[, 150 A.3d 435 (Pa. 2016)]?

Appellant's Brief at 1.

**Sufficiency of the Evidence**

Appellant's first issue, in which he challenges the sufficiency of the Commonwealth's evidence in support of his convictions, is dispositive of this appeal. In this issue, Appellant argues that because Appellant was in the back seat of the vehicle and the police found the contraband in the front seat of the vehicle, the Commonwealth failed to prove that Appellant not only knew about the contraband, but also exercised dominion and control over it.

We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Melvin**, 103 A.3d 1, 39 (Pa. Super. 2014) (citation and quotation omitted). Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility

of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Id.* at 40 (citation and quotation omitted). "Because evidentiary sufficiency is a matter of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Brooker*, 103 A.3d 325, 330 (Pa. Super. 2014).

The jury convicted Appellant of both firearm charges and drug charges. Both types of convictions require the Commonwealth to prove that Appellant "possessed" the contraband. In particular, the firearm convictions were based upon Section 6106 of the Uniform Firearms Act, which provides in relevant part, that "any person who **carries** a firearm in any vehicle . . . without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S. § 6106(a)(1)(emphasis added).

The drug convictions were based upon the Controlled Substance, Drug, Device & Cosmetic Act, 35 P.S. § 780-101, *et* seq. Each of the subsections require the Commonwealth to prove Appellant's possession of contraband. *See* 35 P.S. §§ 780-113(a)(16), (30), (32). For example, Section 780-113(a)(16) of the Controlled Substance, Drug, Device & Cosmetic Act requires the Commonwealth to prove that a defendant "[**k**]**nowingly or intentionally possess**[**ed**] a controlled or counterfeit substance." 35 P.S. §§ 780-113(a)(16) (emphasis added).

The Crimes Code defines the term "possession" as "an act, within the meaning of this section, if the possessor knowingly procured or received the

thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." 18 Pa.C.S. § 301(c).

**Constructive Possession**

This Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." ***Commonwealth v. Heidler***, 741 A.2d 213, 215 (Pa. Super. 1999). Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013) (conviction under 18 Pa.C.S. § 6106(a) supported by a finding of constructive possession). ***See also Commonwealth v. Parker***, 847 A.2d 745 (Pa. Super. 2004) (same). "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." ***Hopkins***, ***supra*** at 820 (citation and quotation omitted). "We have defined constructive possession as conscious dominion," meaning that the defendant has "the power to control the contraband and the intent to exercise that control." ***Id.*** (citation and quotation omitted). "To aid application, we have held that constructive possession may be established by the totality of the circumstances." ***Id.*** (citation and quotation omitted).

It is well established that, "[a]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." ***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa. Super. 1996) (citation omitted). In other words, the Commonwealth must establish facts from which

the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue. ***See***, ***e.g.***, ***Commonwealth v. Davis***, 743 A.2d 946, 953-54 (Pa. Super. 1999) (holding that evidence was sufficient to prove constructive possession over drugs found in common areas of an apartment where the defendant entered the apartment using his own key, and possessed $800 in cash on his person, and police recovered defendant's identification badge, size-appropriate clothing, and firearms from a bedroom).

Significant to the instant appeal, a defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items. ***Commonwealth v. Valette***, 613 A.2d 548, 551 (Pa. 1992). Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. ***Commonwealth v. Juliano***, 490 A.2d 891, 893 (Pa. Super. 1985). Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession. ***Id.***, *citing* ***Commonwealth v. Thompson***, 428 A.2d 223, 224 (Pa. Super. 1981).

If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. ***Valette***, ***supra*** at 551. "It is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession." ***Id.***

In *Juliano*, *supra*, this Court reversed the defendant's conviction of Possession of a Counterfeit Controlled Substance where a satchel containing the contraband was in the car before the defendant entered it. Following the traffic stop that precipitated the defendant's arrest, police observed the satchel on the seat in which the defendant had been sitting. On appeal, this Court found that even though the defendant knew of the existence and location of a satchel, the Commonwealth failed to adduce sufficient evidence from which the factfinder could reasonably infer that the defendant knew of the contents of the satchel. *Id.* at 892-94.

Similarly, in *Commonwealth v. Duffy*, 340 A.2d 869 (Pa. Super. 1975), this Court reversed the defendant's conviction of Possession of Burglary Tools and a violation of the Uniform Firearms Act. There, the defendant was a passenger in a car that police pulled over for an inoperative taillight. A search of the vehicle revealed a pistol far beneath the passenger front row seat, a mask and gloves in the glove compartment, and burglary tools in the back seat. This Court found that the Commonwealth failed to prove that the defendant knew of the presence of the burglary tools and the firearm, and, thus, failed to prove that he had the requisite intent to exercise control. *Id.* at 870.

In the instant case, Appellant was sitting in the back the vehicle on the driver's side. The police located all of the contraband in the front of the car. In particular, the police found the black satchel containing contraband on the

passenger-side floor of the front of the vehicle, the gun under the front passenger-side seat, and marijuana on the front passenger door.

Moreover, the evidence also established that Appellant was not carrying any type of bag when he entered the car; he did not have keys to the car, and was not the owner or operator of it. There is no evidence that Appellant had ever been seated in either of the car's front seats. Neither of the recovered firearms was registered to him and there was no fingerprint evidence for either weapon.

Following our review of the evidence, we fail to see how the jury could reasonably infer that Appellant had knowledge of the contraband in the black bag located in the front row of the vehicle, let alone exercise dominion and control over its contents. The only evidence presented regarding the black bag in the vehicle was its location and that Appellant did not carry a black bag into the vehicle. From this, it is not reasonable for the jury to conclude that Appellant knew about the contents of the black bag and exercised dominion and control over it.

Similarly, we fail to see how the jury could reasonably conclude that Appellant, while sitting in the back seat of the vehicle, had dominion and control over the gun under the passenger-side front seat and the marijuana on front passenger-side door. Rather, the evidence reveals that Appellant was merely present on the driver's side of the back seat of Mr. Riddick's car, while police officers discovered the contraband on the passenger side of the front row of the vehicle.

Simply stated, the Commonwealth did not present any evidence from which it would be reasonable for the jury to infer that Appellant had knowledge of or exercised dominion and control over the contraband.

Moreover, to the extent that Officer Bevliaqua intended to attribute the rocking of the vehicle that he observed following the commencement of the traffic stop to Appellant jettisoning himself away from the contraband located in the front seat, we conclude that, absent other evidence, it is equally reasonable to infer that the rocking was caused by Riddick—who police discovered straddling the center console—attempting to obscure his contraband from sight. In addition, given the evidence regarding Appellant's height and weight, and the size of the vehicle, it strains credulity to conclude that Appellant was able to propel himself from the front seat to the back seat in the short time it took for the officers to reach the vehicle.

Notwithstanding Detective Palka's opinion that, in his experience, the presence of two firearms generally indicates that each occupant possessed a gun, we cannot agree that this evidence is sufficient for a factfinder to conclude that Appellant possessed the firearm in this case.

Thus, the Commonwealth's circumstantial evidence was insufficient to prove that Appellant constructively possessed the contraband. Because the trial court's conclusion was not supported by sufficient evidence, even when

viewing that evidence in the light most favorable to the Commonwealth, we are constrained to reverse Appellant's Judgment of Sentence.[10]

Judgment of Sentence reversed. Appellant discharged. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/9/2018

_____

[10] In light of this disposition, we need not address the merits of Appellant's remaining issues.