J-S12020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TUFTON GREEN | : | |
| | : | |
| Appellant | : | No. 24 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 8, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003509-2017

BEFORE:   SHOGAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                **FILED APRIL 06, 2020**

Tufton Green (Appellant) appeals from the judgment of sentence entered in the Philadelphia Court of Common Pleas, following his jury conviction of persons not to possess firearms.[1]  Appellant contends the evidence was insufficient to prove beyond a reasonable doubt that he constructively possessed a firearm recovered from a vehicle in which he was a passenger.  For the reasons below, we affirm.

On February 18, 2017, police stopped a vehicle in which Appellant was a passenger.  During the ensuing investigation, the officers recovered a sawed-off shotgun from the vehicle in the area where Appellant was seated. Appellant was arrested and charged with several firearms offenses.  The case

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a).

proceeded to a jury trial in May of 2018, on one count of persons not to possess firearms. The trial court summarized the evidence presented during the trial as follows:

Uniformed [Philadelphia] Police Officer Luis Cordero credibly testified that on February 18, 2017, at approximately 9:00 p.m., he had been working solo and was finishing up his shift[.] At that time, he had been a patrol officer approximately fourteen years before starting his next tenure as instructor at the Police Academy.

Officer Cordero started to drive his marked patrol vehicle eastbound on Unity Street[ in Philadelphia.] As he approached the intersection of Unity Street and Leiper Streets, he observed a gold four door Grand Marquis sedan driving at a high rate of speed southbound on the 4400 block of Leiper Street, disregarding a stop sign and turning eastbound on the 1400 block of Unity Street. Officer Cordero immediately activated his lights and pursued and pulled over the speeding vehicle.

After stopping and tactically focusing his flood lights forward to reflect all four vehicle occupants, Officer Cordero observed unusual slouching movements of the two rear passengers, later identified as Tyree Pasture[,] positioned behind the driver, and Appellant, . . . positioned behind the front female passenger. Appellant[,] who was a person of large height and girth, was observed quickly leaning forward, and immediately sitting straight back upright. [Pasture made a similar movement.] Thereafter, Officer Cordero walked beside the Marquis to speak to the driver. He observed Appellant turn around abruptly and oddly change his body position to block the officer's view of the rear seat passenger side area. Appellant moved his back up against the passenger side door, and rested against the front passenger seat and straddled the area to fully face in frontal fashion Officer Cordero. His right hand spanned the rear of the driver's seat. He had purposefully blocked the officer's opportunity to see the back of the front passenger seat and the floorboard area where Appellant's legs and feet were and where the sawed off shotgun had been located shortly thereafter. Appellant remained in this contorted position during the officer's entire inquiry of the driver. Officer Cordero demonstrated for the jury the positioning of Appellant . . . . The other rear passenger, . . . Pasture,

simultaneously, pulled out a cell phone and immediately slouched down on the seat and put his face away and pretended to speak on his cellular telephone.

As Officer Cordero spoke to the driver, later identified as Ricardo Romero, he noticed that the driver trembled tremendously and did not respond coherently to the officer's simple questions. The driver's hands shook so much that Officer Cordero attempted unsuccessfully to verbally calm and assure him. Mr. Romero still could not provide his license, registration, and insurance identification card to Officer Cordero. The front female passenger, later identified as Desiree Huntzberger, abruptly answered the officer's questions posed to . . . Romero, claimed the car to be owned by her relative, and physically handed Officer Cordero the paperwork requested.

. . . Officer Cordero retreated with the vehicle information to his marked police vehicle and immediately called for back-up officers. Moments later, uniformed Philadelphia Police Officers John Lee and Robert Bakos from the same district arrived on the scene to assist. Officer Lee went immediately to the rear driver's side passenger side and started to remove Mr. Pasture from the vehicle while Officer Cordero removed Appellant . . . from the vehicle.

As he was removing Appellant, Officer Cordero heard . . . Officer Bakos whisper, "Gun." Officer Cordero looked down and saw the back portion of a sawed-off shotgun sticking out from underneath the front passenger seat out on the floorboard facing where Appellant had been seated and specifically where he had his feet positioned. This was also the direct area that Appellant had earlier attempted to block from the officer's view after he had abruptly leaned over and sat back up in the upright position[]. At trial Officer Cordero demonstrated with precision and clarity for the jury using a chair in the courtroom the . . . position of the recovered shotgun as he had observed it on the date of arrest.

Upon observation of the weapon, Officer Cordero immediately handcuffed [Appellant] and secured him in his patrol vehicle. Officer Cordero then went back to the Grand Marquis where [Appellant] had been sitting to recover the sawed off and tape[-]wrapped shotgun. There, he also found one (1) green shotgun shell that had been lying on the floorboard next to the gun[.] Three (3) additional green shotgun shells [were found]

inside the rear passenger pouch of the passenger seat that had been within Appellant's immediate and closest reach . . . .

Police Officer Robert Bakos testified that on February 18, 2017, he had been working with his fifteenth district partner, Police Officer John Lee. At approximately 9:00 p.m., he received a radio call for backup for Police Officer Cordero, on the 1400 block of Unity Street. After he arrived, he was informed by Officer Cordero that he wanted to remove the suspiciously behaving people from the vehicle for safe investigation. As officers removed the occupants, Officer Bakos looked down at the floorboard of the vehicle and observed the stock end of a sawed-off shotgun sticking out from the underneath the front passenger seat with the back or handle half of the shotgun closest to where Appellant had been seated, and the one (1) green shotgun shell next to it. He immediately informed Officer Cordero of his observations. The confiscated items were properly assigned to a property receipt, catalogued and submitted for ballistics analysis.

Trial Ct. Op., 7/19/19, at 2-5 (record citations omitted).

The parties also entered the following two stipulations into evidence: (1) the recovered shotgun was tested and determined to be operable, and (2) Appellant is prohibited from possessing a firearm based upon a prior conviction of possession with intent to deliver controlled substances.[2]   N.T. Trial, 5/30/18, at 97-98. Appellant did not testify or present any additional evidence. *See id.* at 105-06, 109.

On May 31, 2018, the jury returned a verdict of guilty on one count of persons not to possess firearms. On November 8, 2018, the trial court sentenced Appellant to a term of five to 15 years' imprisonment, followed by five years' probation. Appellant filed a timely post-sentence motion, challenging the sufficiency of the evidence and the discretionary aspects of his

_____

[2] 35 P.S. § 780-113(a)(30).

- 4 -

sentence. Before the court ruled on the post-sentence motion, and while still represented by counsel, Appellant filed a *pro se* notice of appeal on November 13, 2018.[3] That same day, trial counsel, who was privately retained, sought to withdraw from representation so that appellate counsel could be appointed. The court granted trial counsel's motion on November 14, 2018, and appointed new counsel on November 19th. The trial court then denied Appellant's post-sentence motion on December 4, 2018. Counsel subsequently filed a timely notice of appeal and complied with the trial court's directive to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

In his sole issue on appeal, Appellant contends "[t]he evidence is insufficient to establish that [he] constructively possessed the gun recovered from inside the vehicle." Appellant's Brief at 16. Relying upon several decisions of both the Pennsylvania Supreme Court and this Court, Appellant argues he was merely present in a vehicle, to which he had no connection, and where a firearm was recovered. *Id.* at 24, 29. He asserts the other occupants of the car, unlike him, "exhibited extremely suspicious behavior." *Id.* at 29. Specifically, he notes the driver was "shaking uncontrollably and refused to answer the police officer's questions[,]" while the front seat passenger, "whose family owned the vehicle [and who] was literally sitting on

---

[3] That appeal was later dismissed as duplicative after appellate counsel filed the timely notice of appeal herein. **See Commonwealth v. Green**, 3325 EDA 2018 (docket) (Pa. Super. 2019).

top of the gun[,]" repeatedly "interrupted the officer's inquires" to the extent

the officer had to tell her to "shut up." *Id.* Moreover, Appellant emphasizes:

> There was no scientific, physical, forensic or documentary evidence linking [him] to the gun recovered in the vehicle. . . . Finally, there was nothing found in the car that indicated [Appellant's] knowledge of, or intent to control, the gun found under Ms. Huntzberger's seat in her family member's car.

*Id.* at 31. Consequently, Appellant insists the evidence was insufficient to

sustain his conviction.

Our review of a claim challenging the sufficiency of the evidence is well-

established:

> We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact — while passing on the credibility of the witnesses and the weight of the evidence — is free to believe all, part, or none of the evidence. "Because evidentiary sufficiency is a matter of law, our standard of review is *de novo* and our scope of review is plenary."

*Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018) (citations

omitted), *appeal denied*, 202 A.3d 42 (Pa. 2019).

Appellant was convicted of violating Section 6105 of the Uniform

Firearms Act, which provides, in relevant part:

> **(a) Offense defined. —**
>
> (1) A person . . . whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.
>
> \* \* \*

**(c) Other persons. —** In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):

\*     \*     \*

(2) A person who has been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, that may be punishable by a term of imprisonment exceeding two years.

**See** 18 Pa.C.S. § 6105(a)(1), (c)(2).

When the possession of contraband is an element of an offense, the Commonwealth may establish the defendant's guilt by proving he had actual possession, constructive possession, or joint constructive possession of the contraband in question. **Parrish**, 191 A.3d at 36.

[T]he concept of constructive possession is a legal fiction used to prove the element although the individual was not in physical possession of the prohibited item. The evidence must show a nexus between the accused and the item sufficient to infer that the accused had the **power and intent to exercise dominion and control over it**. Dominion and control means the defendant had the ability to reduce the item to actual possession immediately, . . . or was otherwise able to govern its use or disposition as if in physical possession. Mere presence or proximity to the contraband is not enough. Constructive possession can be established by inferences derived from the totality of the circumstances.

**Commonwealth v. Peters**, 218 A.3d 1206, 1209 (Pa. 2019) (citations omitted and emphasis added). Indeed, "knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession." **Parrish**, 191 A.3d at 37. Moreover, "[a]s with any other element of a crime,

- 7 -

constructive possession may be proven by circumstantial evidence." *Id.* at 36-37 (citation omitted).

In its opinion, the trial court explained in detail the evidence that supported the jury's determination that Appellant constructively possessed the firearm recovered from the vehicle. *See* Trial Ct. Op. at 8-11. The court first emphasized the "location and position of the shotgun when observed by the responding officers." *Id.* at 9. The trial court noted the handle was visible on the floorboard, "closest to where Appellant's feet had been placed[,]" and the barrel of the gun was "facing towards the front of the vehicle." *Id.* The court concluded the location of the firearm "logically pointed to knowledge, dominion, and control, of the rear passenger[.]" *Id.*

Second, the court cited the location of the shotguns shells recovered as "equally relevant proof of Appellant's constructive possession." Trial Ct. Op. at 10. One shell was found on the floorboard next to the firearm, and three more were found in the "rear passenger pouch of the passenger's seat." *Id.* The court summarized: "The shotgun and all of its ammunition had been located closet to Appellant's wingspan thereby providing him with the naturally most exclusive access for firing." *Id.*

Lastly, the trial court credited the testimony of Officer Cordero regarding "Appellant's highly stealthy movements . . . in the vehicle and the salient position of the taped sawed off shotgun." Trial Ct. Op. at 9. These movements include "Appellant's [initial] jerking movements forward and downward and rising upright in the rear passenger seat[,]" — which the court found

"circumstantially indicated" Appellant placed the shotgun under the seat in front of him — as well as "Appellant's subsequent blocking gestures" when the officer approached the vehicle — which the court interpreted as Appellant's attempt to conceal the firearm from view. *Id.* at 9-10. The trial court emphasized that Officer Cordero demonstrated Appellant's movements in the courtroom, which added credibility to his testimony. *Id.* at 10. Accordingly, the court concluded the Commonwealth presented sufficient evidence for the jury to determine beyond a reasonable doubt that Appellant constructively possessed the firearm when he was statutorily prohibited from doing so. *Id.* at 11.

Upon our review of the record, the parties' briefs, and the relevant statutory and case law, we agree. Officer Cordero's testimony detailed Appellant's suspicious movements both before and after the officer approached the vehicle, including Appellant's attempt to position his body to conceal the rear passenger floorboard where the firearm was later recovered.[4] N.T. Trial at 41-44. Furthermore, all of the ammunition for the firearm was found within Appellant's immediate control. *Id.* at 52-54. The fact that Appellant was cooperative with police, and that the other passengers also acted suspiciously, is not dispositive.

The officer's description of the location of the shotgun when it was discovered, as well as Appellant's movements prior to that discovery,

---

[4] As noted by the trial court, Officer Cordero demonstrated Appellant's movements for the jury. Trial Ct. Op. at 10; N.T. Trial at 43-44.

demonstrate Appellant had "knowledge of the existence and location of" the firearm. **See Parrish**, 191 A.3d at 37. Furthermore, his attempts to conceal the weapon, as well as the location of the ammunition, support the jury's determination that Appellant also had the intent to control to shotgun. **See Commonwealth v. Cruz Ortega**, 539 A.2d 849, 851 (Pa. Super. 1988) (holding appellant had constructive possession of cocaine recovered from rented vehicle of which appellant was passenger; officer saw appellant lean over seat before stop and cocaine was found under appellant's seat).

The cases upon which Appellant relies are all readily distinguishable on their facts. **See Commonwealth v. Armstead**, 305 A.2d 1, 51-52 (Pa. 1973) (weapon observed "lying in the middle of the front seat" of vehicle in which appellant was passenger; officers did not observe weapon upon initial stop, wife of car's owner stipulated that gun belonged to her husband, and "equally logical argument [could] be made that . . . driver discarded the weapon as he got out of the car"); **Commonwealth v. Townsend**, 237 A.2d 192, 194-95 (Pa. 1968) (weapons secreted under front passenger seat and hood of vehicle in which Appellant was passenger; "there [was] absolutely no evidence of record indicating where [Appellant] was sitting" in vehicle, and no testimony "he was in any way associated with the weapons found"); **Commonwealth v. Hamm**, 447 A.2d 960, 961-62 (Pa. Super. 1982) (before stop, officer saw back passenger pass object to front passenger, who then placed it under seat where firearm was later discovered; "no evidence to suggest that appellant[/driver] knew of the weapon's existence **before** it was

- 10 -

produced by" back passenger); ***Commonwealth v. Boatwright***, 453 A.2d 1058, 1058-59 (Pa. Super. 1982) (gun found on rear left floor of vehicle in which appellant was front seat passenger; officer's testimony "that appellant made a movement toward the left rear of the vehicle" before stop insufficient to prove constructive possession when vehicle also occupied by driver and left rear seat passenger); ***Commonwealth v. Duffy***, 340 A.2d 869, 870 (Pa. Super. 1975) (gun recovered "far underneath passenger's side of front seat" during consent search of vehicle; evidence failed to demonstrate appellant/passenger "knew of presence of contraband" and Commonwealth did not object to granting appellant relief).

Indeed, Appellant's argument does not view the evidence in the light most favorable to the verdict winner. ***See Parrish***, 191 A.3d at 36. Rather, Appellant focuses on the behavior of the other occupants and the evidence the Commonwealth did **not** present, *i.e.*, DNA or fingerprint analysis. However, Appellant ignores the fact that "it is possible for **two or more people** to have **joint constructive possession** of an item of contraband." ***See Commonwealth v. Hopkins***, 67 A.3d 817, 820-21 (Pa. Super. 2013) (emphases added). Moreover, Appellant cites no authority supporting his assertion that forensic evidence is necessary to prove constructive possession.

Because we conclude the evidence presented was sufficient to prove beyond a reasonable doubt that Appellant constructively possessed the shotgun recovered from the vehicle, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 4/6/2020*