J-S18032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAULA CROSS | : | |
| | : | |
| Appellant | : | No. 1240 WDA 2024 |

Appeal from the Judgment of Sentence Entered September 10, 2024
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001694-2020

BEFORE:   DUBOW, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED: JULY 21, 2025**

Paula Cross ("Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Blair County on September 10, 2024. Appellant proceeded to trial on March 9, 2023, on four counts of persons not to possess a firearm[1][2], and she was subsequently convicted on all four counts. After careful review, we affirm.

On September 18, 2019, the Altoona police department received a report of a possible theft of several firearms from the residence of Appellant's uncle John and aunt Diane Monnikendam. N.T. Trial, March 9, 2023, at 34. At

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S. § 6105(a)(1)
[2] Of note, by agreement of the parties, those four counts had been severed from a twenty-three count information; Appellant previously attempted to appeal this conviction, but as the remaining nineteen counts were not yet resolved, this Court quashed that appeal on June 7, 2024. **Commonwealth v. Cross**, 317 A.3d 655 (Pa. Super. 2024).

that time, Mr. and Mrs. Monnikendam were no longer residing in the home; by March of 2018, Mr. Monnikendam had moved to an assisted living facility, where he later passed away in December of 2018, and Mrs. Monnkidendam had moved in with her daughter and son-in-law, Maria and Brady Dennis. N.T. Trial, March 9, 2023, at 43. However, Diane maintained ownership of the residence and stored much of her and her late husband's personal belongings there, including Mr. Monnikendam's extensive firearm and antique collections. N.T. Trial, March 9, 2023, at 43-47. Mr. and Mrs. Dennis would regularly check in on the property, entering the residence at least bi-weekly. N.T. Trial, March 9, 2023, at 43-44. According to Mrs. Dennis, no one else had permission to enter the residence. N.T. Trial, March 9, 2023, at 47. It was during one of these check-ins, on September 18, 2019, that Mr. Dennis saw that the house had been "turned upside down," and looked like "an animal got loose in the place." N.T. Trial, March 9, 2023, at 32. While Mrs. Dennis was able to confirm that some property was missing from the residence, including a large hutch, due to the number of firearms that had been present and the disorganized state of the house, she could not at that time be sure whether any firearms had been removed. N.T. Trial, March 9, 2023, 47. Nonetheless, the couple called the police.

In the early morning hours of August 28, 2019, following a successful drug bust at the Super 8 Motel in Altoona, Pennsylvania, three pistols and one shotgun were recovered from a room in which one Michael Burchfield had been residing with his girlfriend Summer Heil. N.T. Trial, March 9, 2023, at 54-56.

Among those firearms were: a Ruger Mark I pistol, a Ruger Charger pistol, and a Thomson Center Super 14 pistol, all registered to Mr. Monnikendam, and a Charles Daly Maxi shotgun registered to Appellant's brother, Robert Cross[3]. N.T. Trial, March 9, 2023, 71-72. Mr. Burchfield and Ms. Heil both testified that they received the guns from Appellant's then-fiancé Michael "Mountain Mike" Trosky, in exchange for drugs. N.T. Trial, March 9, 2023, at 88-89, 102. Mr. Burchfield testified that Mr. Trosky came to his motel room six or seven times to exchange guns for drugs. N.T. Trial, March 9, 2023, at 96-97. Ms. Heil testified that Appellant was there with Mr. Trosky at each exchange, and that Appellant and Ms. Heil would get high together at those times. N.T. Trial, March 9, 2023, at 102. Further, concerning the four guns at issue in the instant case, Ms. Heil testified Appellant told her that one of the guns had been stolen from Appellant's brother and that the other three were taken from Appellant's uncle's residence. N.T. Trial, March 9, 2023, at 106.

At trial Mr. Trosky, admitted that it was indeed he and Appellant who had raided the Monnikendams' home, and he confirmed that they had taken firearms therefrom to sell or alternatively trade them for drugs. N.T. Trial, March 9, 2023, 119. He testified that Appellant told him several times that the Monnikendam house had been abandoned following the death of Mr. Monnikdendam, and she had urged Mr. Trosky repeatedly to go to the house to take the guns stored there. N.T. Trial, March 9, 2023, 120. Mr. Trosky

---

[3] These four firearms form the basis for the four counts of persons not to possess of which Appellant was convicted.

testified that at first he refused, but eventually he did relent, and he further testified that he and Appellant raided the house for valuables five or six times. *Id.* He explained that the house was padlocked on their initial arrival, but that Appellant crawled in through the window, and he was able to enter through the back door. N.T. Trial, March 9, 2023, at 121. Mr. Trosky testified that the two packed the firearms they had found in Rubbermaid tubs, and that Appellant helped him to carry the guns from the house to the car because he "couldn't carry them all himself." *Id.* He clarified that there were more firearms taken from the residence than the three which were recovered from the motel room. N.T. Trial, March 9, 2023, at 124. Mr. Trosky did acknowledge at trial that he could not say for certain whether he recalled Appellant ever handling the particular pistols at issue in this matter. N.T. Trial, March 9, 2023, at 137. Prior to trading the firearms, Mr. Trosky explained that the weapons were kept in their basement, to which Appellant had access. N.T. Trial, March 9, 2023, at 131. Mr. Trosky also recounted one incident wherein Appellant had taken a pistol, it is unclear which pistol he is referring to, from the basement and pointed it at him, asking "how do you like me now?" *Id.*

Regarding the Charles Day Maxi shotgun, Mr. Trosky testified that Appellant told him about the shotgun as well, and that they went together to Appellant's parents' house in Juniata, where the gun was stored. N.T. Trial, March 9, 2023, 125-126. Upon arrival, Mr. Trosky waited in the car while Appellant went inside, and returned with the shotgun, whereafter Mr. Trosky called Mr. Burchfield to arrange the trade. N.T. Trial, March 9, 2023, at 126.

At trial, through Robin Patton, Prothonotary and Clerk of Courts for Blair County, the Commonwealth adduced a certified copy of a sentencing order showing Appellant had previously plead guilty to two counts of possession with intent to deliver, graded as felonies. N.T. Trial, March 9, 2023, at 140-141. It is not contested that these convictions render Appellant a person not to possess pursuant to 18 Pa.C.S. §6105(c). Appellant's Brief at 6.

Appellant was convicted and subsequently sentenced on July 14, 2023. Appellant timely filed a notice of appeal on August 14, 2023, and a concise statement of matters complained of on appeal on September 5, 2023. On June 7, 2024, this Court quashed that prior appeal as premature. **See Cross**, **supra.** On October 7, 2024, Appellant timely filed a subsequent notice of appeal following resolution of the remaining nineteen counts listed on the criminal information, and the instant appeal follows. As all nineteen remaining counts included in the criminal information were resolved *via* negotiated agreement, this matter is ripe for disposition.[4] N.T. Guilty Plea and Sentencing September 10, 2024 at 19-20.

Appellant raises one issue for our review:

> "Was the evidence of persons no to possess firearms presented at trial sufficient to convict the Appellant?"

Appellant's Brief at 5.

---

[4] While we are not impeded from reviewing the matter *sub judice*, we do note with displeasure that the Commonwealth has failed to file an Appellee's brief, and furthermore did not file a letter or otherwise give this Court any indication of its intentions or position relative to this matter.

Our standard of review in claims challenging the sufficiency of the evidence is well-settled:

> "The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence."

*Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017)(citation omitted).

To sustain Appellant's conviction for person not to possess a firearm, the Commonwealth must prove: (1) Appellant possessed a firearm and (2) that Appellant had previously been convicted of a disqualifying offense. *Commonwealth v. McIntyre*, 333 A.3d 417, 432 (Pa. Super. 2025); 18 Pa.C.S.A. §6105(c). "This Court has held that possession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018).

> "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control

the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances. Additionally, it is possible for two people to have joint constructive possession of an item of contraband."

***Commonwealth v. Hopkins***, 67 A.3d 817, 820-821 (Pa. Super. 2013)(citation omitted).

As Appellant has acknowledged that she is a person not to possess pursuant to 18 Pa.C.S.A. §6105(C), all that remains for this Court to analyze is the possession element. Here, we find that the Commonwealth adduced sufficient evidence to prove beyond a reasonable doubt that Appellant was in possession of all four firearms at issue. Relative to the Charles Daly Maxi shotgun, the Commonwealth produced an eyewitness, Appellant's ex-fiancé Michael Trosky, who testified that Appellant went into her parents' home and came back out carrying a shotgun. Despite Appellant's characterization of Mr. Trosky's testimony as "highly suspect," we are nonetheless satisfied that this evidence is sufficient to prove that Appellant was in actual possession of the shotgun in question. Appellant's Brief at 8.

Regarding the Ruger Mark I pistol, Ruger Charger pistol, and Thomson Center Super 14 pistol taken from Mr. Monnikendam's residence, we are satisfied that the Commonwealth adduced sufficient evidence to prove beyond a reasonable doubt that Appellant was in joint constructive possession of the pistols. Mr. Trosky's testimony established that Appellant formulated the plan to remove the firearms from the Monnikendam's residence, that she recruited

him into this scheme, that she was an active participant in entering the home, locating the firearms, and packing the firearms, and that she assisted him in carrying the firearms to the car to be transported from the residence. We find of particular note Mr. Trosky's clarification that many firearms were taken from the Monnikendam house which were not recovered, and that packing and carrying all of the stolen firearms from the house was a joint endeavor in which Appellant was actively engaged. Further, appellant retained access to the firearms where they were stored prior to the exchange with Mr. Burchfield and Ms. Heil, arrived with Mr. Trosky at the motel room where the guns were traded, and Ms. Heil testified that Appellant told her from where the firearms had been stolen during the exchange, corroborating Mr. Trosky's testimony. In assessing the totality of these circumstances and viewing the evidence in the light most favorable to the Commonwealth, we find that the evidence clearly shows Appellant exercised "conscious dominion" over all the firearms removed from the Monnikendam house, and thus she was in joint constructive possession of the firearms in tandem with Mr. Trosky. The fact that Mr. Trosky could not say for certain whether Appellant ever physically carried these particular pistols is of no moment. That is to say, that Appellant may only have physically carried the firearms which were not recovered does not expiate her responsibility for the removal of the firearms that were recovered.

As such, we find that Appellant's single issue presented merits no relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>7/21/2025</u>