J-A01011-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARSHON JOHNSON | : | |
| | : | |
| Appellant | : | No. 719 EDA 2025 |

Appeal from the Judgment of Sentence Entered February 27, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005846-2023

BEFORE: DUBOW, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.: **FILED FEBRUARY 19, 2026**

Appellant, Marshon Johnson, appeals from the February 27, 2025 judgment of sentence of six months to two years of incarceration entered in the Philadelphia County Court of Common Pleas following his conviction at a bench trial of Persons Not to Possess Firearms.[1] Appellant challenges the sufficiency of the evidence and the denial of his motion to suppress. After careful review, we reverse the judgment of sentence.

The relevant facts and procedural history are as follows. On May 6, 2023, Appellant and Saniyah Carter were sitting in an idling vehicle with Appellant in the driver's seat and Carter in the front passenger seat. Officer Pedro Martin and Officer Kevin Creely, who were slowly driving by, pulled their patrol car in front of Appellant's car and activated their overhead lights.

_____

[1] 18 Pa.C.S. § 6105(a)(1).

Officer Martin approached the driver's side window and asked Appellant to roll the window down. Officer Martin then asked if the car belonged to Appellant and Appellant told Officer Martin that the car was borrowed. Officer Martin asked for Appellant's identification, which Appellant was unable to provide. Officer Martin then asked if Appellant had any weapons in his waistband and Appellant lifted his sweatshirt and leaned forward to show that he did not.

Officer Martin then asked Appellant if Appellant had any paperwork for the car. While looking for the paperwork, Appellant opened the center console briefly, then shut it. Officer Creely, who was standing at the front passenger window, signaled to Officer Martin that there was contraband in the console. Officer Martin asked Appellant to remove the keys from the ignition, place them on top of the car, and unlock the car door.

As Officer Martin opened the car door, Appellant turned his body toward the front right passenger side of the vehicle and leaned in that direction. At that point, Officer Martin grabbed Appellant by the back of his sweatshirt and yanked Appellant out of the car and onto the ground. The officers handcuffed Appellant.

Officer Creely then recovered narcotics from the center console. Officer Martin approached the passenger side window and shined his flashlight on Carter, who was still sitting on the passenger side of the vehicle. He asked Carter if she had any weapons on her and Carter replied that she did not. Officer Martin then alternated between speaking to Carter and walking away from the passenger side window to speak to Officer Creely and the dispatcher.

Eventually, Officer Martin again shined his light into the passenger side of the vehicle and noticed a handgun wedged between Carter's left foot and the center console. Officer Martin asked Carter if she had a permit to carry. When she replied that she did not, Officer Martin ordered her out of the car and placed her in handcuffs. The police charged Appellant with three violations of the Uniform Firearms Act and one count each of Possession with Intent to Distribute, Criminal Conspiracy, and Possession of a Controlled Substance.

Appellant filed a motion to suppress the narcotics and firearm. On July 2, 2024, the trial court held a hearing on the motion to suppress. Officer Martin was the sole witness at the suppression hearing. Appellant's counsel submitted into evidence the entirety of Officer Martin's body-worn camera footage.

On July 9, 2024, the court granted in part and denied in part Appellant's motion to suppress. The court suppressed the narcotics after concluding that the officers should have obtained a warrant to search the center console, but did not suppress the firearm. In response to the trial court's order, the Commonwealth withdrew all charges except Persons Not to Possess Firearms.

On November 4, 2024, Appellant proceeded to a bench trial. No witnesses testified at trial and the parties stipulated to all evidence, which included: all non-hearsay testimony from the suppression hearing relating specifically to the firearm, the fact that Appellant had refused to comply with a search warrant for his DNA, Appellant's disqualifying prior offense, and

footage of the incident from both officers' body cameras.  At the conclusion of trial, the court found Appellant guilty of Persons Not to Possess Firearms.

On November 18, 2024, Appellant filed a post-sentence motion requesting, *inter alia*, that the court reconsider its verdict due to insufficient evidence. The court denied the motion without a hearing.  On February 27, 2025, the court sentenced Appellant to six months to two years of incarceration.

This timely appeal followed.  Appellant complied with Pa.R.A.P. 1925(b). The trial court filed a letter in lieu of a 1925(a) opinion.[2]

Appellant raises the following issues for our review:

1. Was the evidence insufficient as a matter of law to sustain [Appellant's] conviction for violating § 6105, where the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] had actual or constructive possession of the firearm?

2. Was [Appellant] seized without reasonable suspicion when police pulled their marked patrol car in front of the legally-parked car he was sitting in, blocked the car so he could not leave, and activated their overhead lights because they smelled marijuana?

Appellant's Br. at 3.

_____

[2] In its letter in lieu of a Pa.R.A.P. 1925(a) opinion, the trial court, which rejected Appellant's argument that the evidence was insufficient when it denied Appellant's post-sentence motion without holding a hearing, has now changed course and finds that it "realized it improvidently erred in finding Appellant had access and/or ownership of the firearm found by police in the rental vehicle when, in actuality, this was never proven beyond a reasonable doubt."  Letter, 4/21/25, at 1.

- 4 -

Appellant's first issue, in which he challenges the sufficiency of the Commonwealth's evidence in support of his conviction, is dispositive of this appeal. Appellant argues that the Commonwealth failed to prove constructive possession because Appellant "was merely present in the driver's seat of another person's car in which there was a gun located, [] there was no evidence the gun was visible to him[,]" and he "did not make any statements indicating that the gun belonged to him or that he was aware it was in the car." *Id.* at 27, 24. Further, Appellant asserts that the Commonwealth's characterization of Appellant's leaning motion towards the passenger side of the vehicle as him reaching for the firearm is "an exercise in speculation and conjecture." *Id.* at 27-28.

We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018). "[W]e may not reweigh the evidence or substitute our own judgment for that of the fact finder." *Commonwealth v. Juray*, 275 A.3d 1037, 1042 (Pa. Super. 2022) (citation omitted). "Because evidentiary sufficiency is a matter

of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Brooker***, 103 A.3d 325, 330 (Pa. Super. 2014) (citation omitted).

The trial court convicted Appellant of Persons Not to Possess Firearms. "In order to obtain a conviction under 18 Pa.C.S. § 6105, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a firearm[.]" ***Commonwealth v. Thomas***, 988 A.2d 669, 670 (Pa. Super. 2009). The Crimes Code defines possession as "an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." 18 Pa.C.S. § 301(c).

A trier of fact may find that a defendant actually possessed contraband or did so constructively. ***Parrish***, 191 A.3d at 36. Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013). "We have defined constructive possession as conscious dominion[,]" meaning that the defendant has "the power to control the contraband and the intent to exercise that control." ***Id.*** (citation omitted). "To aid application, we have held that constructive possession may be established by the totality of the circumstances." ***Id.*** (citation omitted).

"[A]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." ***Parrish***, 191 A.3d at 36-37 (citation

omitted). "In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue." ***Id.*** at 37 (citing ***Commonwealth v. Davis***, 743 A.2d 946, 953–54 (Pa. Super. 1999) (holding that evidence was sufficient to prove constructive possession over drugs found in common areas of an apartment where the defendant entered the apartment using his own key, possessed $800 in cash on his person, and police recovered defendant's identification badge, size-appropriate clothing, and firearms from a bedroom)).

Additionally, and significant to our analysis, "a defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items." ***Id.*** "Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt." ***Id.*** "Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession." ***Id.***; ***see also Commonwealth v. Hamm***, 447 A.2d 960, 961-62 (Pa. Super. 1982) (holding that the Commonwealth did not prove Hamm constructively possessed a gun found on the passenger side floor of a vehicle he was driving, which also contained three other individuals, because there was no evidence to prove Hamm knew the gun was there).

"If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive

possession." **Parrish**, 191 A.3d at 37. "It is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture[]' will not make out a case of constructive possession." **Id.** (citation omitted).

Following our review of the evidence, we find that the Commonwealth failed to present sufficient evidence that Appellant constructively possessed the firearm. Here, the evidence demonstrated that Appellant was sitting in the driver's seat of the vehicle and the firearm was wedged between Carter's foot and the center console. Officer Martin noticed the concealed firearm only after he moved to the passenger side of the vehicle and shone his flashlight directly on Carter's feet. Defense Ex. 1 at 3:10:04-3:10:06. The evidence demonstrated that the vehicle was rented and there is no evidence that Appellant had rented it.[3]

To the extent that the Commonwealth characterizes Appellant's movement towards the passenger side of the vehicle as Appellant reaching for the firearm, we conclude that, absent other evidence, it is unreasonable to infer that Appellant knew the firearm was by the passenger's foot and reached specifically for the firearm. The body worn camera footage from the stop merely shows Appellant starting to lean to his right before Officer Martin pulls him out of the car. Defense Ex. 1 at 3:08:06-3:08:08; Defense Ex. 2 at

---

[3] The Commonwealth characterizes Appellant's statement, following his arrest, that Appellant needed to "get the car to where it's going" as Appellant "[telling] police that he needed to return the car" to the rental company. Defense Ex. 1 at 03:12:51-03:12:58; Commonwealth's Br. at 11. We find that it is unreasonable to conclude, based on this vague statement alone, that Appellant rented the car.

3:08:06-3:08:08. The trial court characterized the movement of Appellant's body toward the passenger side as a "reach to the right ever so slightly." N.T. Supp. Hr'g, 7/9/24, at 5. We note that Officer Martin testified at the suppression hearing that he "didn't know what [Appellant] was reaching for[.]" N.T. Supp. Hr'g at 13. Thus, it is not reasonable to infer knowledge of the firearm's existence from Appellant's movement.

In sum, the Commonwealth's evidence reveals merely that Appellant was present in the vehicle where the officers found the firearm.[4] Thus, the Commonwealth's circumstantial evidence was insufficient to prove that Appellant constructively possessed the firearm because the Commonwealth did not present any evidence from which it would be reasonable for the court to infer that Appellant had knowledge of and exercised dominion and control over the firearm. Because the trial court's conclusion was not supported by sufficient evidence, even when viewing that evidence in the light most favorable to the Commonwealth, we are constrained to reverse Appellant's judgment of sentence.[5]

_____

[4] The Commonwealth argues that Appellant's refusal to submit to a DNA test also supports a finding of constructive possession because it is probative of consciousness of guilt of the charged crime. Commonwealth's Br. at 11-12. The trial court, however, declined to place any weight on this evidence, stating: "I'm not even using the [] refusal for the DNA because [Appellant] could [be thinking] no, they're not gonna try to run my DNA and try to put other cases on me and stuff." N.T. Trial, 11/4/24, at 59-60. The trial court did not infer consciousness of guilt of the charged crime and we decline to now reweigh the evidence to do so.

[5] Based on our disposition, we need not address Appellant's second issue.

Judgment of sentence reversed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/19/2026