J-A25033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                :             PENNSYLVANIA
                                                :

           v.                          :

                                                :

MERLE KENDRICK                     :
                                                :

            Appellant            :     No. 247 WDA 2021

Appeal from the Judgment of Sentence Entered January 20, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0005025-2019

BEFORE: KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED: MARCH 11, 2022**

     Merle Kendrick appeals the judgment of sentence entered following a non-jury trial wherein Kendrick was found guilty of: (1) possessing a firearm without a license; (2) persons not to possess a firearm; and (3) possession of heroin, a controlled substance.[1] On appeal, Kendrick challenges the sufficiency of the evidence utilized in both of his firearm convictions as well as his drug-related conviction. Furthermore, Kendrick presents a Pennsylvania Rule of Criminal Procedure 600 argument, contending that the Commonwealth delayed his trial beyond the date as defined by that Rule. We agree that the evidence used to convict Kendrick was insufficient on all three counts.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 6106(a)(1); 18 Pa.C.S.A. § 6105(a)(1); and 35 Pa.C.S.A. § 780-113(a)(16), respectively.

Accordingly, we reverse Kendrick's judgment of sentence.

In summary, a police officer initiated a traffic stop on a vehicle with an inoperable taillight. Kendrick, one of the vehicle's four occupants, was seated in the row behind the driver.[2]

Upon approaching the heavily-tinted automobile, the officer who pulled over the vehicle requested the driver to put his window down. After the driver complied, the officer noticed the smell of marijuana. Following some level of questioning, the driver and another passenger, sitting rear driver's side, admitted to having smoked that substance. The same passenger then handed a second officer a bag that was purported to contain marijuana.

After this bag transfer, the officers ordered all of the occupants out of the vehicle and proceeded to frisk their persons. The first officer then went back to the vehicle and observed an AK-47 firearm lying across the middle of the floor in the back-seating area. This finding prompted the officer to take possession of the weapon and handcuff the vehicle's former occupants.

The second officer then conducted a full search of the vehicle. This search led to the discovery of two additional firearms as well as a substance appearing to be heroin.[3] The one firearm, a Glock 23, was found "just under" the seat on which Kendrick had been sitting. N.T., 12/7/20, at 26. In order to uncover this weapon, however, that police officer had to "ben[d] down a little

_____

[2] Specifically, Kendrick was situated in the rear and on the passenger's side of the vehicle.

[3] No laboratory testing was ever conducted to identify the substance.

bit inside the rear passenger side of the vehicle" and "look down under the seat[.]" *Id*., at 27.

Between the Commonwealth's initial charging of Kendrick and his eventual trial, Kendrick filed a motion to dismiss pursuant to Rule 600, asserting that the Commonwealth's refusal to sever his case from a co-defendant who postponed Kendrick's trial past its mechanical run date was tantamount to it failing to exercise due diligence in getting him to trial in a timely manner. The court denied his motion, but Kendrick was ultimately tried separately from his co-defendant.

At trial, testimony established that: (1) no fingerprints or DNA were recovered from the Glock 23; (2) none of the vehicle's occupants made any statements acknowledging or accepting responsibility for any of the firearms; (3) the vehicle's driver possessed a license to carry a concealed firearm; (4) the police officers could not remember the orientation and/or positioning of the Glock 23, as it was found; and (5) the officers were unable to ascertain when and where the passengers of the vehicle had entered that vehicle prior to the traffic stop. *See id*., 19-21, 28. It was also adduced that Kendrick remained compliant throughout the entire interaction with both police officers and did not make any noticeably furtive movements.

Sitting as factfinder, the court convicted Kendrick of two firearms-related offenses stemming specifically from Kendrick's constructive possession of the Glock 23. The court likewise found Kendrick guilty of one drug-related offense predicated on the recovery of what was purported to be heroin.

Although he was, too, charged with a marijuana-related offense, the court found him not guilty on that count. Subsequently, Kendrick was sentenced to nine to twenty-three months of incarceration[4] to be followed by several years of probation.

After sentencing, Kendrick filed a timely notice of appeal. Correspondingly, the relevant parties have complied with their respective dictates under Pennsylvania Rule of Appellate Procedure 1925. As such, this appeal is ripe for evaluation.

On appeal, Kendrick presents three issues for review:

1. Did the Commonwealth present sufficient evidence to prove beyond a reasonable doubt that … Kendrick exercised conscious dominion or control over a firearm recovered from under a seat in a car whose driver possessed a license to carry a concealed firearm and of which … Kendrick was one of four occupants?

2. Did the Commonwealth present sufficient evidence to prove beyond a reasonable doubt that … Kendrick exercised conscious dominion or control over a controlled substance where it introduced no evidence whatsoever that the substance in question was in fact a controlled substance?

3. Did the trial court err in failing to grant … Kendrick's [m]otion to [d]ismiss [p]ursuant to Pa.[]R.Crim.P.[ ]600 where the Commonwealth delayed his trial past its amended run[]date in order to avoid severing his case from another defendant who was ultimately tried separately?

Appellant's Brief, at 5.

Kendrick's first and second assertions challenge whether the evidence

---

[4] Two of Kendrick's three convictions received terms of incarceration. However, those terms were ordered concurrent to one another.

was sufficient to convict him. Our standard of review employed in such claims is well-settled:

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Lynch*, 242 A.3d 339, 352 (Pa. Super. 2020) (citation omitted) (alterations in original). To demonstrate a material element of a crime, the Commonwealth is permitted to "sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted). Moreover, "[t]he trier of fact bears the responsibility of assessing the credibility of the witnesses and weighing the evidence presented. In doing so, the trier of fact is free to believe all, part, or none of the evidence." *Id.* (citation omitted).

Kendrick avers that the Commonwealth did not present enough evidence to demonstrate the possession or carrying element of his two firearms convictions. *See* 18 Pa.C.S.A. § 6105(a)(1) (prohibiting possession

of a weapon following conviction of an enumerated offense) and 18 Pa.C.S.A. § 6106(a)(1) (prohibiting the carrying of a weapon without a license). Specifically, Kendrick identifies that, *inter alia*, he "was one of four occupants of the vehicle in which the firearm was found, and he did not evince any suspicious behavior at any point during his interactions with police officers." Appellant's Brief, at 13.

Given that he was not in actual possession of the firearm, the trial court determined that Kendrick constructively possessed the Glock 23 found underneath his rear passenger-side car seat. **See** Trial Court Opinion, 5/3/21, at 10-11.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

**Commonwealth v. Parrish**, 191 A.3d 31, 36-37 (Pa. Super. 2018) (citations, brackets, and internal quotation marks omitted). Furthermore, "[t]he evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it." **Commonwealth v. Peters**, 218 A.3d 1206,

- 6 -

1209 (Pa. 2019) (citation omitted). "Dominion and control means the defendant had the ability to reduce the item to actual possession immediately or was otherwise able to govern its use or disposition as if in physical possession." *Id*. (citations omitted).

Importantly, however, "[m]ere presence or proximity to the contraband *is not enough*." *Id*. (citations omitted) (emphasis added); *see also Parrish*, 191 A.3d at 37 (identifying that "the location and proximity of an actor to the contraband alone is not conclusive of guilt. Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession") (citations omitted). To elaborate further, "[i]f the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession." *Parrish*, 191 A.3d at 37 (citation omitted). Stated differently, facts that merely rise to the level of demonstrating association, suspicion, or conjecture between the accused and the contraband are insufficient to prove constructive possession. *See id*. "At the least, the evidence must show that the defendant knew of the existence of the item." *Commonwealth v. Hamm*, 447 A.2d 960, 962 (Pa. Super. 1982) (citations omitted).

In its opinion, the trial court relied exclusively on the location of the Glock 23 vis-à-vis where Kendrick had been sitting to establish constructive possession as to both firearms offenses. *See* Trial Court Opinion, 5/3/21, at

9. The court further emphasized one of the officers' testimonies, which indicated that based on that officer's training and experience, Kendrick's location meant that "the weapon was readily accessible to [him]." *Id*. The court then concluded that

> [v]iewing all the evidence admitted at trial in the light most favorable to the Commonwealth, there was sufficient evidence to prove the elements of carrying a firearm without a license as it is clear [Kendrick] was in constructive possession of the Glock 23 found at his feet when seated in the vehicle.

*Id*.

While Kendrick may have had the power to control the weapon found underneath the place he had been sitting given his proximity to the firearm, there is absolutely no evidence of record tending to demonstrate that he had any attendant intent to control that weapon or even knew of its existence. To the extent that the weapon was, in fact, hidden from plain view, "it is settled that we may not infer that [a defendant] knew of [a] weapon's existence simply from the fact that it was hidden in [an] automobile." *Hamm*, 447 A.2d at 962. Although the Commonwealth is permitted to demonstrate constructive possession through circumstantial evidence and the trial court may find constructive possession by analyzing the totality of the circumstances, our precedent is clear that there must be some additional piece of evidence proffered to demonstrate intent beyond that of spatial juxtaposition.

According to the officer who found the Glock 23, said weapon was not visible unless someone were to bend down and look underneath the seat.

Moreover, the officers noted Kendrick's complete cooperation, his lack of nervousness, and were unable to recall him making any type of furtive movement throughout the entire encounter. Additionally, while it may not be a legally conclusive fact, it is worth noting that the driver of the vehicle in this matter had a license to carry a firearm.

The Commonwealth attempts to demonstrate constructive possession by highlighting the one officer's statement indicating that the firearm was "just under" the seat. Appellee's Brief, at 17. That officer stated: "if you're seated in the rear passenger seat where [he] located the gun, it would have been just hunching over and reaching under and grabbing it" in order to access the weapon. N.T., 12/7/20, at 29. In addition, the Commonwealth highlights that all three recovered weapons were from different manufacturers and located at different places in the vehicle. To elaborate further, the Commonwealth suggests that given the weapons' locations, each firearm was only accessible to one or two people. That accessibility, states the Commonwealth, can allow for a finding of attributability and therefore constructive possession.

Both the trial court and Commonwealth cite **Commonwealth v. Hopkins**, 67 A.3d 817 (Pa. Super. 2013), for the proposition that constructive possession may be found if the firearm is found within arms-length of where a defendant was seated. While it may be factually true that the weapon in **Hopkins** was located within reach of that appellant, there were many other pieces of information submitted to the court that allowed for a totality of the

circumstances finding of constructive possession:

> When viewed in their totality, the facts and circumstances support the finding that appellant was in constructive possession of the contraband and the weapon. Minutes after a known drug user was observed making a cell phone call, pacing in a vacant lot, and counting money, appellant drove his vehicle the wrong way into a dark side street. As the police approached, the known drug user fled. When the transaction was thwarted, Detective Goob, a ten-year veteran of the narcotics unit, observed appellant attempt to hide two bricks of heroin in the space between the driver's seat and the center console of the vehicle he was driving. The detective also observed T.H. throw a brick of heroin onto the floor of the vehicle. The firearm was found within arms-length of where appellant was seated. Additionally, upon arrest, appellant was found with two cell phones and $361 in cash; the juvenile had no money on his person.

*Id*., at 821.

The Commonwealth additionally references *Commonwealth v. Haskins*, 677 A.2d 328 (Pa. Super. 1996), *Commonwealth v. Bentley*, 419 A.2d 85 (Pa. Super. 1980), and *Commonwealth v. Flythe*, 417 A.2d 633 (Pa. Super. 1979). *Haskins* was cited for the distilled proposition that contraband in areas that are usually accessible to the driver of a vehicle allows for a finding of constructive possession. *See* Appellee's Brief, at 22. *Bentley* was cited for the notion that an appellant/driver's easy reach to a weapon in a car registered to that appellant's wife gave rise to an inference that the appellant knew of its presence. *See id*., at 23. And *Flythe* was cited for the discussion that it was unbelievable for that appellant to innocently enter a vehicle and subsequently have no knowledge of a pistol that was in somewhat plain view and a mere inches away. *See id*.

- 10 -

Each case is distinguishable. In **Haskins**, the contraband was found "in the glove compartment … and … in the hatch area[, which] were … areas usually accessible only to the operator of a vehicle [i.e., the appellant]." 677 A.2d at 330. In **Bentley**, the appellant was the driver, the vehicle was registered in his wife's name, and the weapon, which was "protruding from beneath a loose speaker on the floor in front of the driver's seat" was located within easy reach. **See** 419 A.2d at 87. Furthermore, "live bullets were found on the ground immediately adjacent to the driver's door." **Id**. In **Flythe**, that appellant *was* the passenger of a vehicle. After being spotted carrying, *inter alia*, a tear gas gun with three others, the appellant ran to a vehicle and attempted to flee the scene. **See Flythe**, 417 A.2d at 634. At that point, officers saw the appellant "in the front seat of the vehicle leaning down as though placing something under the seat." **See id**. The contraband was found in that position, at least somewhat in plain view, and correspondingly, constructive possession was found given that the appellant "had leaned down to push something under the seat," establishing knowledge of its presence. **Id**.

Of note, **Flythe** additionally featured a dissent, which, unlike those in the majority, sought more of a factual basis than simply observing an appellant leaning forward. Judge Spaeth indicated that the Commonwealth did not prove that the appellant intended to exercise the power to control the contraband. **See id**., at 635 (Spaeth, J., dissenting). Judge Spaeth continued

by identifying that: (1) the appellant did not own the automobile in which he was a passenger; (2) any other person, such as the owner of the vehicle or the driver, could have placed the contraband there; and (3) the officer's view was obfuscated when he saw the appellant lean forward. *See id*. The Judge concluded: "[a]t most the Commonwealth has presented evidence of the officer's suspicions, which is not sufficient." *Id*. While a dissenting opinion is not binding, it is illuminative of this Court's precepts regarding constructive possession. Namely, there needs to be *some* threshold proffered by the Commonwealth tending to demonstrate an intent to exercise control over a contraband.

At a minimum, *Flythe* featured a police officer testifying that he saw a movement related to where contraband would ultimately be found. Conversely, we are unable to discern *any* factual nexus connecting Kendrick to a corresponding intention to control the firearm beyond that of his location. First, there is no evidence that the weapon was in plain view or able to be seen without manipulating one's body in a way that would be distinct from simply being a vehicular passenger. Second, the orientation of the gun (such as the location of the trigger, etc.) as it lay underneath the seat was unable to be remembered and is therefore unknown. Third, Kendrick was a passenger in the vehicle which he did not own, and there is no evidence related to when or where he, or the other passengers, entered the vehicle. Fourth, the driver was licensed to carry a concealed firearm. Fifth, other than a demonstration

of its operability, no physical testing of the Glock 23 was performed, either DNA or fingerprint. Sixth, neither Kendrick, nor any of the vehicle's other occupants, made any kind of contemporaneous or after-the-fact statement tying him or anyone else to the specific contraband. Seventh, Kendrick remained completely compliant and did not make any furtive movements at all relevant points.

Looking at the totality of the circumstances, we are constrained by the lack of any additional factual basis tying Kendrick to the weapon.[5] As stated prior, a hidden weapon, standing alone, cannot form the inference that an individual would have knowledge of its existence in an automobile. *See Hamm*, 447 A.2d at 962. Other than his location to the firearm, which, by itself, is insufficient to demonstrate constructive possession as a matter of law, there is simply no salient basis of record to conclude that Kendrick had an intent to exercise control over the weapon.

Although we view all evidence in the light most favorable to the Commonwealth, proximity, by itself, is not enough to demonstrate constructive possession, and nothing more has been offered that extends beyond that domain. As such, we find the evidence insufficient to convict

_____

[5] To the extent the Commonwealth suggests that the different weapons uncovered in this case make it more likely for them to be attributable to specific occupants, we are unable to find any related authority on this assertion. If anything, it would be equally, if not more, likely that a legal gun owner, such as the driver here, would opt to acquire distinct firearms rather than having three of the exact same type.

Kendrick on his two firearms-related convictions.

In his second argument, Kendrick asserts that the Commonwealth failed to present evidence beyond a reasonable doubt to establish that he possessed heroin or any other controlled substance. Kendrick bolsters this claim by stating that one of the officers testified that the recovered substance appeared to be heroin, but that nothing further was entered into evidence to conclusively demonstrate what that substance was. Absent information related to how the substance was packaged or any kind of laboratory report confirming its composition, Kendrick believes that the Commonwealth failed to meet its burden of proof.

The Commonwealth and the trial court agree with Kendrick's argument:

Upon a thorough review of the record, the [t]rial [c]ourt has determined that the Commonwealth failed to introduce a crime lab report at the time of trial to establish that the alleged controlled substance was heroin, or any controlled substance. Due to this oversight, the [t]rial [c]ourt acknowledges that [it] failed to provide sufficient evidence to prove beyond a reasonable doubt that [Kendrick] physically or constructively possessed a controlled substance. As such, [Kendrick's] conviction and sentence for possession of a controlled substance should be vacated[.]

Trial Court Opinion, 5/3/21, at 11. "The Commonwealth has also reviewed the trial record thoroughly and concurs with [Kendrick] and with the court that there was insufficient evidence to sustain the conviction based on the failure to introduce laboratory report showing that the substance was heroin." Appellee's Brief, at 42.

As we see no basis to depart from the agreed-upon rectification of Kendrick's drug-related conviction, we agree that the evidence was insufficient to convict him and proceed accordingly.

Because all three of Kendrick's convictions were predicated on insufficient evidence, we reverse his entire judgment of sentence.[6]

Judgment of sentence reversed. Appellant discharged. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/11/2022

---

[6] Given our adjudication of Kendrick's first two issues, it is unnecessary to discuss his third.