J-A13035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ZAHIR SMITH | : | |
| | : | |
| Appellee | : | No. 1395 EDA 2021 |

Appeal from the Order Entered June 24, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002780-2021

BEFORE: OLSON, J., DUBOW, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED JULY 8, 2022**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Philadelphia County Court of Common Pleas, which dismissed firearms and conspiracy charges filed against Appellee, Zahir Smith. We reverse and remand.

The trial court set forth the relevant facts of this appeal as follows:

> Philadelphia Police Officer Jonathan Arch testified that, in the early hours of May 31, 2020, he received a radio call for a burglary in progress at a shopping center located at 3000 Island Avenue in the city and county of Philadelphia. Officer Arch arrived at that location at approximately 2:45 a.m., where he observed a white Nissan Altima, which did not have a license plate, speeding through the shopping plaza. The vehicle hit a curb and became disabled, at which time a male, alleged to be [Appellee] exited from the driver side door. Subsequently, one female, alleged to be Julisa Prak … exited the front passenger door, and another woman, alleged to be Jarenny Ros …, fled from the rear of the vehicle. The officer ordered [Ms. Ros] to stop, and placed her in custody in the back of his patrol car. Officer Arch

testified that he observed that the windows and doors of the Snipes store at the shopping center were all broken, and that he observed clothing and sneakers in and around the white Altima. On cross examination, Officer Arch stated that there was a riot taking place in the shopping center at the time he encountered the defendants, and that many people were looting stores in that location. He further testified that he did not see the white Altima or the defendants themselves near the Snipes store, that there are several stores in the shopping center in question, and that many of those stores also appeared to have been looted. The officer positively identified all three defendants as the individuals he encountered fleeing the white Altima.

Philadelphia Police Detective Francesco Campbell testified that on the date in question, he executed a search warrant on the vehicle. Inside was a large amount of merchandise from the Snipes store. He indicated that he knew it was from Snipes because a store employee identified the merchandise from its tags, and estimated its value in the thousands of dollars. Officers also recovered a firearm from underneath the merchandise.

(Trial Court Opinion, filed 9/7/21, at 1-2).

On April 8, 2021, the court conducted a preliminary hearing, and Appellee and his co-defendants' cases were held for court. On April 20, 2021, the Commonwealth filed a criminal information charging Appellee with burglary, criminal trespass, theft by unlawful taking, receiving stolen property, conspiracy, violations of the Uniform Firearms Act ("VUFA"), and possessing an instrument of crime ("PIC"). Appellee's co-defendants subsequently filed motions "to quash bills of information," which asserted that the Commonwealth had failed to establish a *prima facie* case against them. Although Appellee did not file a motion, his counsel appeared at the June 24, 2021 evidentiary hearing on the pretrial motions. At that time, Appellee's

counsel joined in the co-defendants' motions by arguing that the court should also dismiss the charges against Appellee. Specifically, Appellee's counsel insisted that "[t]he weapon is in the back seat, and there was a passenger in the back seat, and identification was also recovered in the back seat." (N.T. Evidentiary Hearing, 6/24/21, at 6).

Immediately following the hearing, the court dismissed the VUFA and conspiracy charges against Appellee. The Commonwealth timely filed a notice of appeal on July 8, 2021, under Pa.R.A.P. 311(d).[1] On July 21, 2021, the court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth timely filed its Rule 1925(b) statement on July 26, 2021.

The Commonwealth now raises one issue for our review:

> Did sufficient evidence support a *prima facie* case for the charges of [VUFA] and conspiracy, where [Appellee] and his two female co-defendants were observed fleeing the scene of the crime, a Snipes retail store; the windows to the store had been broken; goods belonging to the store were found scattered throughout the car [Appellee] had been driving; and a gun was found in the back seat underneath the stolen goods?

(Commonwealth's Brief at 6).

The following principles apply to this Court's review of an order granting

---

[1] *See* Pa.R.A.P. 311(d) (stating that in criminal case, Commonwealth may take appeal as of right from order that does not end entire case where Commonwealth certifies in notice of appeal that order will terminate or substantially handicap prosecution).

a pretrial petition for writ of *habeas corpus*:

> We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth. Whether the Commonwealth satisfied its burden of establishing a *prima facie* case for each charged crime is a question of law, to which this Court's standard of review is *de novo* and our scope of review is plenary.
>
> A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

**Commonwealth v. Wyatt**, 203 A.3d 1115, 1117 (Pa.Super. 2019) (internal citations and quotation marks omitted).

"The Commonwealth establishes a *prima facie* case when it produces evidence that, **if accepted as true**, would warrant the trial judge to allow the case to go to a jury." **Commonwealth v. Ouch**, 199 A.3d 918, 923 (Pa.Super. 2018) (emphasis in original). "The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged." **Id.**

On appeal, the Commonwealth argues that the facts established at Appellee's preliminary hearing "supported an inference that [Appellee] had knowledge of the gun, had the power to exercise control of the gun, and,

therefore, had constructive possession of the gun." (Commonwealth's Brief at 14). Further, the Commonwealth asserts that the evidence permitted "an inference of an agreement among the three occupants of the car, with a shared intent of burglarizing the Snipes store." (*Id.* at 17). The Commonwealth maintains that it established a *prima facie* case for the VUFA and conspiracy charges against Appellee. The Commonwealth concludes that this Court must reverse the order dismissing the charges against Appellee. We agree.

The Pennsylvania Crimes Code defines the offense of criminal conspiracy as follows:

**§ 903.  Criminal conspiracy**

**(a)  Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

  (1)  agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

  (2)  agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

\*    \*    \*

**(c) Conspiracy    with    multiple    criminal objectives.**—If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

18 Pa.C.S.A. § 903(a), (c).

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act was done in furtherance of the conspiracy." **Commonwealth v. Melvin**, 103 A.3d 1, 42 (Pa.Super. 2014) (citation omitted).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Id.* at 42-43. "Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." **Commonwealth v. Barnes**, 871 A.2d 812, 820 (Pa.Super. 2005), *aff'd*, 592 Pa. 301, 924 A.2d 1202 (2007).

Further, the Uniform Firearms Act provides, in relevant part, as follows:

### § 6106. Firearms not to be carried without a license

**(a) Offense defined.**—

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

\* \* \*

### § 6107. Prohibited conduct during emergency

**(a) General Rule.**—No person shall carry a firearm upon the public streets or upon any public property during an emergency proclaimed by a State or municipal governmental executive unless that person is:

(1) Actively engaged in a defense of that person's life or property from peril or threat.

(2) Licensed to carry firearms under section 6109 (relating to licenses) or is exempt from licensing under section 6106(b) (relating to firearms not to be carried without a license).

\* \* \*

### § 6108. Carrying firearms on public streets or public property in Philadelphia

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1) such person is licensed to carry a firearm; or

(2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. §§ 6106(a)(1), 6107(a), and 6108.

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession…." ***Commonwealth v. Jones***, 874 A.2d 108, 121 (Pa.Super. 2005). "We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control." ***Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa.Super. 2018), *appeal denied*, 651 Pa. 10, 202 A.3d 42 (2019) (internal quotation marks omitted). "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." ***Jones, supra*** at 121. "Constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." ***Commonwealth v. Valette***, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992).

> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

***Parrish, supra*** at 36-37 (internal citations and quotation marks omitted).

Instantly, Officer Arch arrived at the scene in response to a burglary call. (***See*** N.T. Preliminary Hearing, 4/8/21, at 6). Upon arrival, the officer observed a Nissan Altima speed through the shopping plaza and hit a curb. (***Id.***) Appellee, who occupied the driver's seat, exited the Nissan with his co-defendants and fled. (***Id.*** at 7). At the preliminary hearing, Officer Arch made an in-court identification of Appellee and his co-defendants. (***Id.*** at 5).

Regarding the conspiracy charge, police apprehended Appellee and his co-defendants after they fled from the Nissan. Police subsequently obtained a warrant, searched the Nissan, and discovered items belonging to the Snipes store. (*Id.* at 6-7). The Snipes store appeared to have been burglarized, as its windows and doors were broken. (*Id.* at 6). Although the Commonwealth did not present evidence of an explicit agreement between Appellee and his co-defendants, their conduct and circumstances made it reasonable to infer the existence of a shared criminal intent. *See Melvin, supra*. Taken together, the facts established a *prima facie* case for conspiracy. *See Wyatt, supra*.

As for the VUFA charges, Officer Arch testified that his interaction with Appellee and his co-defendants occurred during a "riot" in the midst of a COVID-19-related "shut down" in Philadelphia. (*See* N.T. Preliminary Hearing at 12, 14). Further, police found a firearm in the backseat of the Nissan, underneath merchandise from the Snipes store. (*Id.* at 21). Detective Campbell testified that Appellee did not have a license to carry a firearm. (*Id.* at 22). Since Appellee was the driver of the Nissan, it is reasonable to infer that he could have exercised conscious dominion over the firearm. *See Parrish, supra*. Therefore, the Commonwealth presented sufficient evidence to establish a *prima facie* case for the VUFA charges under the theory of constructive possession. *See Wyatt, supra*.

Our review of the testimony produced at the preliminary hearing, viewed

in the light most favorable to the Commonwealth, leads us to conclude that the Commonwealth presented sufficient evidence to establish a *prima facie* case as to the VUFA and conspiracy charges filed against Appellee. **See Wyatt, supra**; **Ouch, supra**. Accordingly, we reverse the order granting Appellee *habeas corpus* relief, and we remand this case for further proceedings consistent with this decision.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2022