J-A22033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:         PENNSYLVANIA
:
               v.                 :
:
:
CHACE JAY COLE             :
:
           Appellant         :    No. 1207 WDA 2021

Appeal from the Judgment of Sentence Entered September 8, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000838-2021

BEFORE:    OLSON, J., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:         **FILED: NOVEMBER 28, 2022**

Appellant, Chace Jay Cole, appeals from the judgment of sentence imposed after the trial court found him guilty of carrying a firearm without a license, possession of drug paraphernalia, and disorderly conduct.[1] He challenges the sufficiency of the evidence and asserts that the Commonwealth failed to disprove an affirmative defense to his firearms charge. Upon careful review, we affirm.

The trial court has offered the following summary of the facts for our review:

> At trial, Officer Brian Frank of the Monroeville Police Department testified that on November 26, 2020, he responded to a call that a man was knocking on a door on the ninth floor of an apartment

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6106(a)(1), 35 P.S. § 780-113(a)(32), and 18 Pa.C.S. § 5503(a)(1), respectively.

building and swearing at the person inside. Officer Frank testified that the assailant was not immediately apprehended. An hour later, a second reporting source indicated an individual was on the first floor of the same building, knocking on her door and swearing at her. Officer Frank testified that he searched the building one floor at a time and discovered an individual on the eighth floor. The officer was in full uniform and yelled[,] "Stop. Police[,]" but the person instead ran down several flights of stairs and was eventually arrested on the fifth floor. Appellant refused to comply with numerous officer commands, broke away from Officer Frank and Officer Frank required the assistance of another officer to effectuate the arrest. Officer Frank identified Appellant as the person he arrested and added that he was familiar with Appellant because Officer Frank had responded "thousands of times" to reports of Appellant knocking on doors. At the police station, officers searched the backpack Appellant had been wearing and recovered a firearm which was unloaded and had a locking mechanism on it. No magazine or ammunition were recovered from the backpack. The officers also recovered a scale and glass pipes from the backpack.

Appellant testified that his girlfriend rents an apartment on the third floor, and he had been residing with her. Appellant further testified that the gun was in his backpack because he was transporting it from a safe in his girlfriend's apartment to a safe in his friend's residence. Appellant stated he was going directly from his girlfriend's apartment to his friend's apartment even though he had not called his friend to see if his friend was home. His friend did not live in the building. Appellant stated that if his friend was not home when Appellant arrived, he would have taken the gun to his friend's place of work.

Trial Ct. Op., 1/26/22, 2-3 (record citations omitted).

We note, in addition to the trial court's summary of the facts, that Officer Frank testified that the first 911 caller did not give a description of the man who was allegedly knocking on a door and swearing on the ninth floor of the apartment building, but the "second reporting source" from the first floor "gave a description of a bald male wearing a gray T-shirt, black pants[,] and

work boots." N.T. 9/8/21, 14. When asked if he "located" anyone, Officer Frank testified, "Yes, I was searching for the male, I was going floor by floor checking every floor for him which I located *him* on the eighth floor." *Id.* at 15 (emphasis added). Officer Frank described that person as running down the hallway into a stairway, and then noted that he located him on the seventh and fifth floors. *Id.* at 15-16 ("At that time I located him on the fifth floor. I heard an elevator door opening to which I went over, saw Chace Cole in the elevator.").

Appellant proceeded to a non-jury trial on September 8, 2021. After the trial court heard testimony from Officer Frank and Appellant, it found Appellant guilty of the above-referenced charges and found him not guilty of resisting arrest.[2] Appellant declined a request for a pre-sentence investigation report and, on the same day, the court sentenced him to four to eighteen months of imprisonment to be followed by one year of probation for carrying a firearm without a license. The court did not impose any further penalty for the remaining offenses. Appellant did not file any post-sentence motions, and timely filed a notice of appeal invoking our jurisdiction for this appeal. Notice of Appeal, 10/8/21. After the court granted his request for an extended response deadline, Appellant filed a court-ordered concise statement of errors complained of on appeal. Rule 1925(b) Statement, 1/12/22.

Appellant raises the following issues for our review:

_____

[2] 18 Pa.C.S. § 5104.

> I.    Did the trial court err in finding that the evidence was sufficient to support the guilty verdicts in this case because the Commonwealth failed to establish that the defendant was the person identified by the 911 callers?
>
> II.   Did the trial court err when it determined that the Commonwealth had disproven the defense raised by Mr. Cole as provided in Section 6106(b)(8) of the Crimes Code?

Appellant's Brief at 6 (suggested answers omitted).[3]

In his first issue presented, Appellant claims that the evidence was insufficient to sustain the trial verdicts "because the Commonwealth failed to establish that [he] was the person identified by the 911 complainants." Appellant's Brief at 12. He points out that there was no evidence that he was the person who had been knocking on apartment doors and swearing, *i.e.*, the person that the police were summoned to investigate. *Id.* He thus asserts that his convictions are "the product of conjecture and surmise." *Id.* We conclude that the instant claim is meritless because Appellant does not demonstrate that any of the elements of his convictions went unproven.

> Our standard of review for a sufficiency claim is as follows:
>
> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond

---

[3] In his Rule 1925(b) statement, Appellant also included a third issue challenging the sufficiency of the evidence for his disorderly conduct conviction. Rule 1925(b) Statement, ¶ 5(a)(3). However, Appellant has not included that issue in his appellate brief. Accordingly, we find it abandoned on appeal. *See Commonwealth v. Dunphy*, 20 A.3d 1215, 1218 (Pa. Super. 2011) (issues raised in a Rule 1925(b) statement but not included in appellate brief are abandoned).

a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Chisebwe*, 278 A.3d 354, 358 (Pa. Super. 2022) (citation omitted).

To establish that Appellant violated 18 Pa.C.S. § 6106(a)(1) and committed the crime of carrying a firearm without a license as a felony of the third degree, the Commonwealth needed to prove beyond a reasonable doubt that Appellant "carrie[d] a firearm in any vehicle" or "carrie[d] a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued [firearms] license." 18 Pa.C.S. § 6106(a)(1).

To establish that Appellant violated 35 P.S. § 780-113(a)(32) and committed the crime of possessing drug paraphernalia as a misdemeanor, the Commonwealth needed to prove beyond a reasonable doubt that Appellant used or possessed, with intent to use, drug paraphernalia "for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing,

compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance." 35 P.S. § 780-113(a)(32), (i).

To establish that Appellant violated 18 Pa.C.S. § 5503(a)(1) and committed the crime of disorderly conduct as a summary offense, the Commonwealth needed to prove beyond a reasonable doubt that Appellant, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, … engage[d] in fighting or threatening, or in violent or tumultuous behavior." 18 Pa.C.S. § 5503(a)(1), (b).

Appellant argues that the evidence did not prove that he was the person alleged in 911 calls to be causing the disturbances that the police were responding to, but that argument has no bearing on the sufficiency of the evidence for his firearm and drug paraphernalia convictions. When the police arrested Appellant, he was carrying a backpack that contained an unloaded handgun with a lock on it, a scale, three glass pipes that Officer Frank described as "crack pipes," and "baggies" that Officer Frank identified as typically used for the packaging of different types of drugs. N.T. 9/8/21, 18-19, 25-26, 28-29. The police also recovered an additional "crack pipe" on Appellant's person at the time of his arrest. *Id.* at 18. It was uncontested that Appellant did not have a valid firearms license. *Id.* at 20; Commonwealth Trial Exhibit 2 (gun licensing form).

Viewing the evidence in the light most favorable to the Commonwealth – as is required by the controlling standard of review – this evidence was adequate to sustain the firearm and drug paraphernalia convictions. Appellant's possession of the backpack containing the gun and drug paraphernalia during his apparent flight through the apartment building prior to and at the time of his arrest constituted possession of the items recovered from the backpack.[4] **See Commonwealth v. Parrish**, 191 A.3d 31, 36 (Pa. Super. 2018) (for purposes of a statutory element of possession, this Court has explained that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession") (citation omitted). Given the precise combination of a scale that would be commonly used for weighing controlled substances, along with glass pipes that would be commonly used for smoking crack cocaine, and "baggies" that would be commonly used for packaging controlled substances, we find that the trier of fact below made a reasonable inference that the items found in Appellant's backpack constituted drug paraphernalia. **See** 35 P.S. §§ 780-102(b)(5), (9), (10), (12)(i) (defining scales used for weighing controlled substances, envelopes or "other containers" used for the packing of small quantities of

---

[4] Appellant does not raise any argument in the instant claim that the common area hallways of the apartment building were "in his place of abode" for purposes of Section 6106, however, an assertion to that effect would not change our assessment of the sufficiency of the evidence. **See, e.g., Commonwealth v. Ortiz**, 738 A.2d 403, 405 (Pa. 1999) ("[T]he common meaning of 'place of abode' is the actual house or apartment of a person. It does not include common areas to which a person has a right of access but which are shared with others who have a similar right of access.").

controlled substances, and glass pipes intended for the use of inhaling controlled substances, as drug paraphernalia).

To the extent that Appellant asserts in his challenge to the sufficiency of the evidence that the evidence failed to prove that he was person causing the disturbances that caused Officer Frank's presence in the apartment building, he appears to be suggesting that there was inadequate evidence permitting his arrest and the recovery of the items from his backpack. Any argument concerning the inadmissibility of the gun and drug paraphernalia based on an alleged inadequacy of evidence for a search and seizure is immaterial for purposes of a challenge to the sufficiency of the evidence for the gun and drug paraphernalia convictions because, when we address the sufficiency of the evidence, we must consider all the evidence presented during the trial, without consideration as to its admissibility. ***See Commonwealth v. Sanford***, 863 A.2d 428, 431-32 (Pa. 2004) ("[A] challenge to the admissibility of evidence is separate from a sufficiency claim. Indeed, it is improper for a court, when reviewing a sufficiency challenge, to eliminate from its consideration any evidence which it deems to be inadmissible.").

With respect to the sufficiency of the evidence for all the offenses, we reject Appellant's theory that the evidence did not adequately connect him to the reports that brought Officer Frank to the scene. Here, after Officer Frank testified that the "first caller" did not offer a description for a suspect and identified the description offered by another caller, he was asked, with respect

to his response, "And at that point did you locate anyone?" N.T. 9/8/21, 14-15. He responded, "Yes, I was searching for the male, I was going floor by floor checking every floor for him which I located *him* on the eighth floor." ***Id.*** at 15 (emphasis added). He then testified that he thereafter located that man on the seventh and fifth floors and then referred to seeing Appellant in an elevator. ***Id.*** at 15-16. Read in the light most favorable to the Commonwealth, and in their proper context, the testimony of Officer Frank proved Appellant's identity as the suspect for the reported disturbances in the building. When Officer Frank testified that he was searching for "the male," he was speaking about the suspect described by the "second caller," and that this person turned out to be Appellant. ***Id.*** ("At that time I located *him* on the fifth floor. I heard an elevator door opening to which I went over, saw Chace Cole in the elevator.") (emphasis added).[5]

---

[5] We see no indication from the trial court's docket that Appellant challenged the constitutionality of his detention and sought the suppression of the contents of his backpack or person prior to trial. He appears to be using a sufficiency claim as a substitute for an evidence admissibility claim. Assuming *arguendo* that an admissibility challenge based on a theory of lack of identity was raised below, it would appear to be meritless based on the content of Officer Frank's affidavit of probable cause that is included in the certified record for this appeal. ***See*** Affidavit of Probable Cause, 11/26/20, 2 (Officer Frank noted in his sworn affidavit, "I then proceeded to check the stairways and every floor before I located COLE ***who matched the description*** on the 8th floor") (emphasis added). We cannot consider the content of that affidavit for sufficiency purposes because it was not marked and moved into the evidentiary record as an exhibit at trial, however, it is nevertheless consistent with our interpretation of Officer Frank's testimony.

The instant claim merely alleges that the Commonwealth failed to present sufficient evidence proving Appellant's identity as the suspect described by the second 911 caller. Having rejected that claim based on our careful reading of Officer Frank's testimony, we decline to find that the evidence was insufficient to prove any of the elements of Appellant's convictions.

In his second issue, Appellant asserts that the Commonwealth failed to disprove his assertion of the affirmative defense at 18 Pa.C.S. § 6106(b)(8). Pursuant to that defense, a person who would otherwise be carrying a firearm in violation in section 6106(a) is not criminally liable provided that they are carrying an unloaded firearm for the purposes of, *inter alia*, safekeeping it:

> (b) Exceptions.--The provision of subsection (a) shall not apply to:
>
> …
>
> (8) Any person while carrying a firearm which is not loaded and is in a secure wrapper from the place of purchase to his home or place of business, or to a place of repair, sale or appraisal or back to his home or place of business, or in moving from one place of abode or business to another or from his home to a vacation or recreational home or dwelling or back, or to recover stolen property under section 6111.1(b)(4) (relating to Pennsylvania State Police), or to a place of instruction intended to teach the safe handling, use or maintenance of firearms or back or to a location to which the person has been directed to relinquish firearms under 23 Pa.C.S. § 6108 (relating to relief) or back upon return of the relinquished firearm or to a licensed dealer's place of business for relinquishment pursuant to 23 Pa.C.S. § 6108.2 (relating to relinquishment for consignment sale, lawful transfer or safekeeping) or back upon return of the relinquished firearm or to a location for safekeeping

> pursuant to 23 Pa.C.S. § 6108.3 (relating to relinquishment to third party for safekeeping) or back upon return of the relinquished firearm.

18 Pa.C.S. § 6106(b)(8).

At trial, Appellant testified that he was taking the recovered gun to his friend's house to store it in his friend's safe because his girlfriend that he was living with was on probation. N.T. 9/8/21, 37-38 (Appellant: "I didn't want to get her in trouble for having a firearm in the apartment."). The purpose of the transportation of the gun was for safekeeping. *Id.* at 39 (Appellant: "I was just transporting it to a safe location."). He asserted that the gun was in a locked compartment in his backpack that had "a suitcase lock." *Id.* at 38-40, 42. When asked on cross-examination about whether he had called his friend to see if the friend was home for him to take the firearm to, Appellant responded, "No, we're very close. I knew staying there the firearm could be there." *Id.* at 42. In response to questions posed by the court, Appellant confirmed that his girlfriend's apartment was on the third floor of the apartment building. *Id.* at 43.

Appellant's counsel asserted that the defense under section 6106(b)(8) applied. N.T. 9/8/21, 47. Among other concerns about the use of the phrase "secure wrapper" in the statutory defense, the court suggested that the argument for the application for that defense was incredible because, while Appellant's girlfriend lived on the third floor of the apartment building and he was supposedly transporting the gun to a friend's home at another location, he was found carrying the gun on the upper floors of the apartment building.

*Id.* at 48 (The Court: "[I]t does hurt your argument significantly that he was on the eighth floor, on the seventh floor, and on the fifth floor of the building rather than in the parking lot headed to his automobile."), 50 (The Court: "I'm asking why he had the gun in his backpack that he said he was taking to his friend's house when he was on other floors of the apartment; ninth floor, eighth floor, fifth floor from where he and his girlfriend lived? How that fits into the intent of the statute which is clearly to relocate a firearm?), 51-52 (The Court: "But the evidence, in this case, doesn't show that he was going anywhere except running the hallways of that building.").

The court ultimately denied the application of the section 6106(b)(8) defense on credibility grounds:

> THE COURT: But for the fact that he was running all over the building, I would find merit to this argument even willing to read as a disjunctive between the secure wrapper from the place of purchase or a place of business. But in this case, it was not a secure wrapper, I would be willing to overlook that and say insufficient with no ammunition, and no clip, and the lock through the mechanism that it would meet the spirit of section (b)(8), but given his behavior of running through the building, I find his testimony not credible. Also not credible that he didn't realize that the woman he lived with for ten years was on probation, even though he claims that he knows the law very well and that she didn't tell him, but he figured out she was on probation and couldn't have a gun. So there's some inconsistency in the story here. All of that does concern me, and it does not meet the spirit of the law and the letter of what the exception is.

N.T. 9/8/21, 53-54.

On appeal, Appellant asserts that he raised the statutory exception under section 6106(b)(8) and that it should have applied because the gun was

unloaded, the locked backpack qualified as a "secure wrapper" for purposes of the statute, and he was "moving [the gun] from one abode to another." Appellant's Brief at 23, 26-29. He argues that "[t]he trial court's disbelief of [his] testimony d[id] not afford affirmative proof that the denied fact existed so as to satisfy the Commonwealth's burden of disproving the defense." *Id.* at 29. He posits that the defense could not have been rejected on credibility grounds and, instead, he should have prevailed on the defense because it was not disproved by the Commonwealth. *Id.* at 29-30.

We disagree with Appellant's analysis of the applicability of the alleged defense and find that he failed to meet his threshold burden of presenting some evidence to justify a finding that the section 6106(b)(8) exception applied to his movement of the recovered gun. *See, e.g., Commonwealth v. Yogel*, 453 A.2d 15, 16 (Pa. Super. 1982) (noting with respect to Yogel's assertion of a statutory affirmative defense, "As such an accused who desires to assert such a defense must present evidence that it applies to him."); *see also Commonwealth v. Lopez*, 565 A.2d 437, 440 (Pa. 1989) ("Section (b) [of 18 Pa.C.S. § 6106] specifically enumerates certain justifications for carrying a firearm outside one's home or fixed place of business. As recognized by the Superior Court, these exceptions are affirmative defenses, *which must be placed in issue by the defendant*, and which need not be negated by the prosecutor in its case-in-chief.") (emphasis added).

Putting aside the state of the gun as unloaded and whether Appellant needed to demonstrate a "secure wrapper" of the gun for purposes of section

- 13 -

6106(b)(8), Appellant failed to demonstrate that the affirmative defense of safekeeping applied to his movement of the gun. In trying to demonstrate the applicability of the defense, he italicizes the following portion of the defense provision in his brief: "moving from one place of abode or business to another." Appellant's Brief at 24. With the evidence offered, however, Appellant was not asserting that he was moving to his friend's home or business and taking the gun with him. *See* N.T. 9/8/21, 37 (Appellant: "… so I decided it was a good idea to get it out of the apartment and take it somewhere safe there was another safe where it would be away from her … I was taking it to a friend's house that has a safe. He was in the military, I trusted it being there."). Appellant by his own testimony was not transporting the gun as part of a relocation of himself between homes or businesses. Instead, he alleged that he was moving the gun for the purposes of safekeeping the gun elsewhere while he continued to reside with his girlfriend who was supposedly serving probation. Appellant's Brief at 30 ("Accordingly, Mr. Cole established that his weapon … was being transported to another location for safekeeping."). Accordingly, for the safekeeping defense to be properly placed at issue before the trial court, he needed to present evidence that the safekeeping provisions of section 6106(b)(8) applied.

The relevant portion of section 6106(b)(8) provides an exception for liability under section 6106(a) for carrying an unloaded firearm "to a location for safekeeping pursuant to 23 Pa.C.S. § 6108.3 (relating to relinquishment to third party for safekeeping).…" Accordingly, to properly raise the defense,

Appellant needed to present evidence that he was carrying the recovered gun to transfer it pursuant to 23 Pa.C.S. § 6108.3. He did not do that below and his movement of the gun was not even argued to have been meant for the purpose of a transfer of the gun under that separate statute.

23 Pa.C.S. § 6108.3(a) provides a general rule that a defendant "who is the subject of a protection from abuse order, which order provides for the relinquishment of firearms … may, within the time frame specified in the order and in lieu of relinquishment to the sheriff, relinquish any firearms, other weapons or ammunition for safekeeping to a third party who meets the requirements of a third party under subsection (b)(3)." Right from the start, section 6108.3 did not apply in this case to permit Appellant to carry his firearm for the purposes of safekeeping under the 6108(b)(8) exception because he was not moving the gun to his friend's safe as part of a forced relinquishment of that firearm pursuant to a protection from abuse order.[6]

Even if Appellant could voluntarily relinquish his gun to his friend for safekeeping purposes under section 6108.3, Appellant's testimony did not

---

[6] The defense under 6106(b)(8) addresses two permissible forms of safekeeping, which are to be conducted pursuant to 23 Pa.C.S. §§ 6108.2-6108.3. Section 6108.2 has no applicability in this case because it only applies to relinquishments of firearms to firearms dealers licensed pursuant to 18 Pa.C.S. § 6113. *See* 6108.2(a). Appellant's friend could have conceivably fit within 6108.3(i)'s definition of a "third party," however, that statute's definition of safekeeping would not apply to Appellant's supposed voluntary relinquishment of his firearm to his friend based on the testimony offered at trial. *See* 23 Pa.C.S. § 6108.3(i) (defining "Safekeeping" as "[t]he secure custody of firearms, other weapons or ammunitions which ***were ordered relinquished by an active protection from abuse order***") (emphasis added).

present any evidence of an effort to commit a third-party transfer of the gun under that statute. Under that statute, he could not directly transfer the gun to his friend by simply dropping it off at the friend's workplace or home. Instead, section 6108.3(b)(1) would have required him and his friend to have met together in a county sheriff's office at which point a sheriff could issue a safekeeping permit to the friend under section 6108.3(b)(2), so long as the friend was not prohibited from possessing firearms, other weapons, or ammunition. Only after the issuance of a safekeeping permit would Appellant be able to relinquish a firearm to his friend, at which point the friend would have been required to sign an acknowledgment of receipt on a form prescribed by the Pennsylvania State Police. *See* 23 Pa.C.S. § 6108.3(b)(4). Appellant's testimony did not contemplate any compliance with 23 Pa.C.S. § 6108.3. There was no discussion of section 6108.3 below and no evidence presented that Appellant acted with the intent to make a formal third-party transfer of a firearm under that section to provide a basis for applying the exception under 18 Pa.C.S. § 6106(b)(8) for an affirmative defense.

We cannot logically address the assertions that the Commonwealth failed to disprove an affirmative defense under section 6108(b)(8) and that the trial court improperly denied the application of that defense on credibility grounds because Appellant never presented any evidence below of an intent or effort to complete a safekeeping transfer under 23 Pa.C.S. § 6108.3, and thus he never properly placed the issue of section 6108(b)(8)'s safekeeping defense before the trial court. Because Appellant never provided any evidence

for a transfer under 23 Pa.C.S. § 6108.3, the Commonwealth had no burden to disprove a safekeeping defense under section 6108(b)(8) and the trial court's credibility determination is immaterial for purposes of our review.[7] *See Commonwealth v. Mouzon*, 53 A.3d 738 (Pa. 2012) (addressing the affirmative defense of self-defense and noting, "Although the defense has no burden to prove self-defense … *before the issue is properly in issue*, 'there must be some evidence, from whatever source, to justify such a finding.' Once the question is properly raised, 'the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defense was not acting in self-defense.'") (citation omitted and emphasis added). For this reason, Appellant's instant claim merits no relief.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/28/2022

---

[7] "We may, of course, affirm the decision of the trial court if the result is correct on any ground without regard to the grounds which the trial court itself relied upon." *Commonwealth v. Shaw*, 431 A.2d 897, 899 n.1 (Pa. 1981) (citation omitted).