J-S38022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DANIEL GRABOWSKI :
:
Appellant : No. 539 EDA 2022

Appeal from the Judgment of Sentence Entered January 19, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0004661-2021

BEFORE:  KUNSELMAN, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                **FILED DECEMBER 22, 2022**

Daniel Grabowski (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of possession of a firearm with altered manufacturer's number, possession of a firearm by a prohibited person, possession of a firearm without a license, and possession of a firearm on the public streets of Philadelphia.[1]  We affirm.

On April 1, 2021, Philadelphia Highway Patrol Officer Michael Chichearo attempted to stop a Chevy Trailblazer for having illegally tinted windows.  The Trailblazer fled but was forced to stop when it encountered traffic at the intersection of Wakeling Street and Aramingo Avenue.  The Trailblazer unsuccessfully attempted to push vehicles out of the way.  When that failed, one man fled on foot from the driver side, while two others ran from the front

---

[1] *See* 18 Pa.C.S.A. §§ 6110.2, 6105, 6106, 6108.

and rear passenger sides. Officer Chichearo engaged in a foot chase and apprehended Appellant, who had exited from the rear passenger side. As Officer Chichearo escorted Appellant back to the police vehicle, he saw that the rear passenger side door of the Trailblazer was open and observed a firearm on the floor of the rear passenger side. Police arrested Appellant and the Commonwealth charged him with various firearms offenses.

The trial court held a non-jury trial and convicted Appellant of the four firearms offenses enumerated above. On January 19, 2022, the trial court sentenced Appellant to an aggregate 3 - 6 years in prison. Appellant timely appealed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following questions for review:

[1.] Is the evidence sufficient as a matter of law to sustain [Appellant's] convictions of the Uniform Firearms Act, 18 Pa.C.S.A. §§ 6105, 6106 and 6108[,] where the competent evidence of record did not establish beyond a reasonable doubt that [Appellant] constructively possessed the handgun recovered in the vehicle in which [Appellant] was merely a passenger?

[2.] Is the evidence sufficient as a matter of law to sustain [Appellant's] convictions of the Uniform Firearms Act, 18 Pa.C.S.A. §§ 6106 and 6108[,] where the competent evidence of record did not establish beyond a reasonable doubt that the alleged firearm was operable or capable of being converted into an object that could fire a shot?

[3.] Is the evidence sufficient as a matter of law to sustain [Appellant's] convictions of the Uniform Firearms Act, 18 Pa.C.S.A. § 6105[,] where the competent evidence of record did not establish beyond a reasonable doubt that the alleged firearm was designed to or may readily be converted to expel any

- 2 -

projectile by the action of an explosive or the frame or receiver of any such weapon?

Appellant's Brief at 4-5 (some capitalization changed).

Appellant challenges the sufficiency of the evidence. As an appellate court, we examine whether the evidence and all reasonable inferences, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient for the trial court to conclude that the Commonwealth established the challenged element of the offense beyond a reasonable doubt. *Commonwealth v. Yandamuri*, 159 A.3d 503, 514 (Pa. 2017). "It is well-established that the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence and the [fact-finder], while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence." *Id.* Only "where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, [is] the evidence … insufficient as a matter of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

Appellant first challenges the trial court's determination that he constructively possessed the firearm recovered on the rear floor of the Trailblazer. Appellant's Brief at 17. Appellant emphasizes that two other men were in the Trailblazer. *Id.* at 18. According to Appellant, Officer Chichearo recovered the firearm from under the front passenger seat, with only half of the weapon sticking out in the backseat area. *Id.* at 19. Appellant also directs

- 3 -

our attention to evidence that Officer Chichearo could not see where Appellant had been seated before exiting the vehicle, and the fact that the vehicle was not registered to Appellant. *Id.* Appellant further emphasizes that the firearm was not tested for DNA evidence or submitted for fingerprint analysis. *Id.*

Appellant analogizes the facts in this case to the facts in *Commonwealth v. Armstead*, 305 A.2d 1 (Pa. 1973), where the Pennsylvania Supreme Court found the evidence insufficient to support a finding of the passenger's constructive possession of a firearm recovered from "the middle of the front seat of the automobile." *Id.* at 2. Appellant asserts:

> It was equally logical to infer that the driver [of the Trailblazer] – who fled from police in a vehicle and then on foot – or the front seat passenger seated directly on top of the gun, were the individual(s) who had knowledge of, and control over, the gun found in the [Trailblazer]. Applying our Supreme Court's holding in *Armstead*, the evidence of record … is legally insufficient to sustain [Appellant's] conviction under the Uniform Firearms Act.

Appellant's Brief at 21.

Appellant also relies on *Commonwealth v. Townsend*, 237 A.2d 192 (Pa. 1968), where the Pennsylvania Supreme Court reversed a conviction after determining the evidence failed to establish constructive possession. Appellant's Brief at 22. In *Townsend*, officers saw a man exit a vehicle, drop a firearm, pick it up, and then throw the firearm on the seat of the vehicle. *Id.* Another firearm was inside the vehicle. *Id.* at 23. Our Supreme Court reversed the firearm conviction of a passenger who had remained inside the vehicle. *Id.* at 22. Appellant relies on the *Townsend* holding that an

accused's mere presence in a vehicle containing a weapon is not sufficient to establish constructive possession. *Id.* at 22-23. Appellant claims he was merely present in the Trailblazer. *Id.* at 23.

To convict Appellant of persons not to possess firearms, the Commonwealth was required to show that Appellant: 1) was previously convicted of an enumerated offense; and 2) possessed a firearm. 18 Pa.C.S.A. § 6105. "Possession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018) (citation omitted).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

*Id.* at 36-37 (citations, brackets, and quotation marks omitted). "The evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it." *Commonwealth v. Peters*, 218 A.3d 1206, 1209 (Pa. 2019) (citation omitted). "Dominion and control means the defendant had the ability

to reduce the item to actual possession immediately or was otherwise able to govern its use or disposition as if in physical possession." ***Id.*** (citations omitted).

The power and intent to control does not need to be exclusive. The Pennsylvania Supreme Court has recognized that "constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." ***Commonwealth v. Johnson***, 26 A.3d 1078, 1094 (Pa. 2011) (citation and brackets omitted). This Court has held that evasive behavior during a traffic stop along with the discovery of a firearm may support a conviction for firearms possession. ***See Commonwealth v. Cruz***, 21 A.3d 1247, 1253 (Pa. Super. 2011) (constructive possession established where driver gave multiple false names to arresting officer and gun was found in compartment of car); ***see also Commonwealth v. Perez***, 220 A.3d 1069, 1078 (Pa. Super. 2019) (*en banc*) (flight from crime scene can constitute circumstantial evidence of consciousness of guilt); ***Commonwealth v. Jones***, 570 A.2d 1338, 1349 (Pa. Super. 1990) (holding that fact finder may infer consciousness of guilt from person's flight or other evasive conduct during police presence).

At trial, the Commonwealth presented testimony from Officer Chichearo. N.T., 10/15/21, at 8. Officer Chichearo testified that he was patrolling the area of 5200 Harbison Avenue in Philadelphia when he saw the Trailblazer with what appeared to be illegally tinted windows. ***Id.*** at 10. When Officer

Chichearo attempted to stop the Trailblazer, it "fled southbound on Harbison

and then it continued over Bridge Street. Southbound on Aramingo, which I

believe is the 5000 block of Aramingo Avenue." *Id.* at 10-11. Officer

Chichearo and his partner were pursuing the Trailblazer when it encountered

traffic at Wakeling Street and Aramingo Avenue. *Id.* at 12. Officer Chichearo

explained:

> The vehicle was stuck in traffic. Actually tried making its way through some traffic. Bumped a few cars out of the way.
>
> ….
>
> [T]he vehicle came to a stop. My partner got out of the vehicle. Ran up to the driver's side of that vehicle. And that's when I saw two males run from the passenger's side of the vehicle from it [*sic*] would be the front passenger door. And then [Appellant] r[a]n from the rear passenger door.
>
> ….
>
> I pursued [Appellant] and another unknown male southbound on Aramingo.

*Id.* at 11-12.

Officer Chichearo apprehended Appellant "on the 2200 block of

[Wakeling] in the rear yard which is a block, a block and a half from the vehicle

stop where they fled from." *Id.* at 13. Officer Chichearo and Appellant walked

past the Trailblazer. Officer Chichearo stated:

> As I returned to the vehicle, both the passenger side doors, the front and back, that I observed the males flee from[,] were both still open. And as I walked [Appellant] back to my police vehicle, I could look in the open door in the rear passenger door. And right there on the floorboard I could see a black semiautomatic firearm with the barrel facing towards me which I immediately

knew to be a firearm. And I placed [Appellant] in the back of our car.

*Id.* at 14.

Officer Chichearo identified Commonwealth's Exhibit C-13 as the firearm he saw on the floor of the Trailblazer. *Id.* at 16. Officer Chichearo described the serial number of the firearm as "obliterated." *Id.* Officer Chichearo testified that he handles firearms daily as part of his job. *Id.* at 17. He further explained that he is required to participate in firearms training and qualify at a shooting range every year. *Id.* Officer Chichearo opined that the firearm recovered from the Trailblazer was a functioning firearm. *Id.*

Officer Chichearo further described the firearm being "on the back floorboard area on the passenger's side partially sticking out." *Id.* The officer testified that approximately half of the firearm was "sticking out from the floorboard towards the back." *Id.* On cross-examination, Officer Chichearo specified that the barrel was facing the back of the Trailblazer. *Id.* at 25. When asked whether the Trailblazer had "slammed" into the back of another vehicle, the officer stated:

> I wouldn't say slammed. It was more like trying to push it out of the way. It was not enough damage. Where the other operator was like, I don't even want to make a report.

*Id.* Officer Chichearo explained the Trailblazer was not moving fast "because we were literally stuck in heavy traffic. It was pretty heavy where they were." *Id.* at 26. Pertinently, Appellant stipulated that he did not have a license or

permit to carry a firearm. *Id.* at 27. On these facts, we are not persuaded by Appellant's reliance on ***Armstead***.

In ***Armstead***, the firearm was recovered from the middle of the front seat of the vehicle.

> Philadelphia police officers … stopped an automobile in which appellant was a passenger and requested that both the driver [] and appellant get out of the car. The original arresting officers did not observe any weapon. However, while appellant was on the sidewalk, next to the car, another police vehicle arrived on the scene. One door of the car was open, and the interior lights were on, enabling the police in the second vehicle to observe a .38 caliber automatic pistol lying in the middle of the front seat.

***Armstead***, 305 A.2d at 2. Our Supreme Court concluded there was insufficient evidence of constructive possession by the appellant, who was the passenger, because an "equally logical argument can be made that the weapon was on the person of the driver during the time appellant was a passenger …." *Id.* Here, the facts are different and support the trial court's finding that Appellant constructively possessed the firearm recovered from the rear of the Trailblazer.

Appellant was the sole occupant in the rear of the Trailblazer and Officer Chichearo saw him exit from the rear of the passenger side where the firearm was discovered. The firearm was accessible to Appellant and the barrel was positioned toward the rear, *i.e.*, toward Appellant, and partially under the front passenger seat, when Appellant fled.

Appellant's reliance on ***Townsend*** is also unavailing. In ***Townsend***, the police found a firearm partially concealed under the front passenger seat

- 9 -

of a vehicle containing multiple occupants, but there was no evidence as to where the defendant was seated. *Townsend*, 237 A.2d at 193-95. Here, Appellant was the only person in the rear of the Trailblazer. N.T., 10/15/21, at 11-12. Appellant's first issues does not merit relief.

In his second issue, Appellant argues the evidence was insufficient to sustain his conviction of carrying a firearm without a license and carrying a firearm on the streets of Philadelphia. Appellant's Brief at 33. Appellant argues that the evidence did not establish beyond a reasonable doubt that the firearm "was operable or capable of being converted into an object that could fire a shot." *Id.* Appellant asserts:

> A determination that the gun recovered by Officer Chichearo was operable or capable of being converted into an object that could fire a shot can only be based upon conjecture, suspicion or surmise in light of the evidence received at trial.

*Id.* at 35-36 (quotation marks and citation omitted).

The seminal case on firearm operability is *Commonwealth v. Layton*, 307 A.2d 843 (Pa. 1973). The Pennsylvania Supreme Court reversed a conviction under the predecessor of 18 Pa.C.S.A. § 6105, where the record demonstrated that the defendant's firearm could not have been fired at the time of his arrest. *Layton*, 307 A.2d at 845. Notably, our Supreme Court stated: "A reasonable fact finder may, of course, infer operability from an object which looks like, feels like, sounds like or is like, a firearm. **Such an inference would be reasonable without direct proof of operability**." *Id.* at 844 (emphasis added).

- 10 -

In **Commonwealth v. Horshaw**, 346 A.2d 340 (Pa. Super. 1975), where an appellant claimed that the Commonwealth failed to present evidence that a weapon was operable, we explained:

> The Commonwealth need not show the weapon to have been operable **until evidence of its inoperability has been introduced into evidence**, and [b]ecause no evidence as to inoperability was introduced into evidence, the appellant's claim is without merit.

**Id.** at 342 (emphasis added).

Instantly, Appellant presented no evidence that the firearm recovered from the Trailblazer was inoperable. Thus, the Commonwealth was not required to show the firearm was operable. **See id.**

In his third issue, Appellant argues the evidence was insufficient to support his conviction of persons not to possess a firearm, as there was no evidence the firearm was "designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." Appellant's Brief at 38. Appellant is simply repeating his challenge to the trial court's "inference" that the weapon was capable of firing. **Id.** As noted above, Appellant stipulated at trial that he did not have a license or permit to carry a firearm. N.T., 10/15/21, at 27. This claim does not merit relief.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *12/22/2022*